[No. B084709. Second Dist., Div. Five. Dec. 5, 1995.]

MARTIN MARIETTA CORPORATION et al., Plaintiffs and Appellants,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant and
Respondent.

## COUNSEL

Hill, Wynne, Troop & Meisinger, Kirk A. Pasich, Martin D. Katz and Linda D. Kornfeld for Plaintiffs and Appellants.

O'Melveny & Myers, W. Mark Wood, Martin S. Checov and H. Douglas Galt for Defendant and Respondent.

## OPINION

ARMSTRONG, J.—This appeal raises an issue regarding the scope of personal injury coverage in a policy of insurance issued to appellants Martin Marietta Corporation, Martin Marietta Carbon, Inc., and Martin Marietta Aluminum (Martin Marietta) by respondent Insurance Company of North America (INA). Specifically, we are asked to determine whether policy language insuring Martin Marietta's liability for "wrongful entry or eviction, or other invasion of the right of private occupancy" provides coverage for specified actions, brought by a variety of governmental entities, which require, or seek to require, Martin Marietta to remediate groundwater and other contamination emanating from landfill and other sites. The trial court granted summary adjudication and judgment in favor of INA, after determining that under the policy there was no potential for coverage for the claims at issue, and that INA had no duty to defend or indemnify Martin Marietta. We reverse the judgment.

*Factual and Procedural Summary*[1]

In this action, Martin Marietta claimed insurance coverage from INA and many other of its liability insurers for actions brought against it by federal and state governmental entities under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 United States Code section 9601 et seq. (CERCLA), the Resource, Conservation and Recovery

---

[1] INA's request that we take judicial notice of a pleading in another action, in which Martin Marietta admits a proposed undisputed fact relating to coverage for property damage at its Waterton, Colorado facility, is denied. The pleading was not before the trial court in this case, was not subject to disputation and argument in the summary adjudication proceeding, and has no bearing on the issue before us.

Act, 42 United States Code section 6001 et seq. (RCRA) and similar statutes and theories. The actions related to the remediation of groundwater and other contamination emanating from a number of landfill and other sites. As to INA, Martin Marietta tendered claims regarding cleanup orders and actions at seven sites: the Dalles, Oregon site; the Goldendale, Washington site; the Green River Disposal site; the Operating Industries, Inc., site; the Seymour Recycling site; the Commercial Oil Services, Inc., site; and the Stringfellow site.

The INA policy at issue covers the period from May 6, 1968, to November 6, 1972, and includes only automobile coverage and the personal injury coverage at issue here. The personal injury coverage provides that "INA will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages[2] because of personal injury to which this insurance applies . . . ."

Personal injury is defined as "(1) bodily injury, disability, shock, mental anguish and mental injury; (2) false arrest, detention or imprisonment, or malicious prosecution; (3) the publication or utterance of a libel or slander or of other defamatory material, including disparaging statements concerning the condition, value, quality or use of real or personal property, or a publication or utterance in violation of an individual's right of privacy, except when any of this foregoing part (3) arises out of the Named Insured's advertising activities; (4) *wrongful entry or eviction, or other invasion of the right of private occupancy*; (5) racial or religious discrimination, unless insurance therefor is prohibited by law, not committed by or at the direction of the Named Insured." (Italics added.)

INA moved for summary adjudication on the ground that the claims were not "because of personal injury," and that it thus had no duty to defend or indemnify Martin Marietta. Martin Marietta argued that there was a potential for coverage because "personal injury" is defined in the policy to include "wrongful entry or eviction, or other invasion of the right of private occupancy," and that there was thus a duty to defend. Martin Marietta argued, and argues, that under the quoted portion of definition the policy provides coverage for actions based on common law theories of trespass and nuisance, that the governmental actions are based at least in part on those theories, and that the governmental actions include allegations of wrongful entry and of invasions of the right of private occupancy.

---

[2]It is settled that the basic forms of relief sought by governmental entities in CERCLA suits are damages for purposes of insurance coverage. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 841-842 [274 Cal.Rptr. 820, 799 P.2d 1253].)

With its motion, INA proposed undisputed facts. Martin Marietta did not dispute those facts, but offered additional facts regarding each claim, which were in large part undisputed by INA. We summarize these undisputed facts.

*The Dalles, Oregon site*

This site is owned by Martin Marietta. In a consent decree, Martin Marietta agreed to take remedial measures proposed by the federal Environmental Protection Agency (EPA) to clean up groundwater contamination. The EPA and the State of Oregon alleged liability under CERCLA, including allegations that the actions required by the consent decree were necessary to protect the public health and welfare, that businesses and one residence depended on the contaminated groundwater for drinking, and that fourteen thousand people were served by the groundwater. The consent decree required Martin Marietta to obtain consent of property owners where cleanup work was to be performed. Under the consent decree, the EPA and the State of Oregon agreed to forego claims under CERCLA, the RCRA, and the common law, including common law nuisance.

*The Goldendale, Washington site*

This site, too, is owned by Martin Marietta. The State of Washington's Department of Ecology discovered groundwater contamination at the facility and ordered Martin Marietta to implement a cleanup plan. The order alleged violation of a state environmental statute designed in part to protect the public health.

*The Green River disposal site*

This is a landfill site, regarding which Martin Marietta is subject to an EPA order alleging CERCLA liability and ordering remediation of contamination of a creek and of groundwater, in part to protect the public from endangerment. The EPA order referred to migration of contaminants and to the presence of arsenic in a nearby well, and alleged that 2,600 people lived within a 3-mile radius of the site and that there was a significant threat of individual contact with contaminants. Martin Marietta was ordered to conduct a well survey which would include the landowner's identity and the landowner's comments regarding water taste and odor, to supply an acceptable alternate supply of drinking water to all adversely impacted parties, and to obtain site access agreements from the owners of land subject to cleanup.

*The Operating Industries, Inc., site*

This site is also a landfill. Under a consent decree with the EPA, Martin Marietta and others agreed to construct and maintain a leachate treatment

system on this site. The EPA alleged that the actions required of Martin Marietta were necessary to protect the public welfare. The EPA also alleged the off-site migration of contaminants, that the release of hazardous substances from the site posed a threat to human health; that there were several residences adjacent to the site, 53,000 residences within a 3-mile radius of the site, and several businesses on or near the site; and that methane levels exceeded the lower exposure limit in nearby residential areas. Martin Marietta was ordered to use good faith efforts to obtain access agreements from persons who had control over the property where work was to be performed.

### The Seymour recycling site

Regarding this site, the EPA filed a complaint alleging imminent and substantial endangerment to human health and welfare due to groundwater contamination. Martin Marietta agreed to be bound by a consent decree requiring it to seal and abandon wells, including approximately 100 residential and business wells, to impose deed restrictions and other enforceable instruments restricting private residential or commercial use of property on or surrounding the site, to conduct a survey of residences and businesses in the site area to determine if the owners wished to have a well on the property sealed, and to seal all wells for which it had the owner's permission. In return, the United States and the state government agreed not to sue under CERCLA, the RCRA, or common law theories.

### The Commercial Oil Services, Inc., site

The EPA notified Martin Marietta that it might be liable for cleanup of this site, alleging liability under CERCLA. The EPA alleged that three lagoons at the site were contaminated with PCB's, oil, and sludge, so that rainfall could result in those contaminants spilling into a nearby creek and into Lake Erie.

### The Stringfellow site

In the action regarding this site, the EPA and the State of California sued under CERCLA, the RCRA, common law protections of the public health, safety, and welfare and of the state's natural resources, and a number of California statutes. Those statutes included Health and Safety Code section 205, which authorizes the Department of Health Services to, inter alia, commence and maintain actions to abate nuisance, and Civil Code sections 3479-3496, concerning actions for nuisance. The Montrose Chemical Corporation, sued in the action, brought a third party complaint against Martin Marietta, incorporating by reference the government's claims and seeking contribution and indemnity.

As to this site, Martin Marietta also proposed as an undisputed fact that an individual and an organization called Concerned Neighbors in Action filed a complaint in intervention alleging nuisance and seeking relief under CERCLA, the RCRA, and common law theories.[3] INA disputed the fact, citing in support the order granting Concerned Neighbors leave to intervene, which INA contends allowed intervention "only for the purpose of pressing claims alleged by the governmental plaintiffs." However, INA did not dispute Martin Marietta's next proposed fact, that the Montrose complaint incorporated by reference the allegations of the intervener's claims.

The trial court granted INA's summary adjudication motion[4] and entered judgment for INA. In its order, the trial court found that "the INA policy's coverage for certain damages because of personal injury cannot reasonably be construed as including government pollution clean up claims."

## Discussion

### 1.  Standard of Review/Burden on Summary Adjudication

Both INA's burden on its motion for summary adjudication and the scope of our review of the trial court ruling are well known. ██ "A defendant who moves for summary judgment must either *prove* an affirmative defense which would bar every cause of action pled in the complaint or *disprove* at least one essential element of each cause of action in the complaint. [Citation.] The moving party must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial. [Citations.] If the defendant does not satisfy its burden as the moving party, the motion must be denied . . . . [¶] In evaluating the correctness of [the] ruling . . . , we must independently review the record before the trial court. Because the grant or denial of [the] motion . . . involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion. . . . [¶] . . . [¶] In practical effect, we assume the role of a trial court and redetermine the merits of the motion. In doing so, we must rigidly scrutinize the moving parties' papers." (*Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548-549

---

[3]Pursuant to a settlement agreement between INA and Martin Marietta, coverage for those claims is not at issue in this litigation.

[4]Martin Marietta also moved for summary adjudication, seeking the dismissal of INA's sixth affirmative defense, that U.S. v. Stringfellow (U.S. Dist. Ct., C.D.Cal., 1983, No. Civ. 83-2501) presented no potential for liability for personal injury as defined in the policy. The motion was denied. Martin Marietta now asks us to order the trial court to rule in its favor on the motion. The denial of a motion for summary adjudication is not an appealable order, and we decline to make the order Martin Marietta requests. (Code Civ. Proc., § 904.1; *Belio* v. *Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101 [39 Cal.Rptr.2d 737].)

[5 Cal.Rptr.2d 674]; *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 742-743 [41 Cal.Rptr.2d 719].)[5]

As Martin Marietta argues, it is well established that an insurer has a duty to defend its insured when the action brought against the insured potentially seeks damages within the coverage of the policy. It is equally well established that the existence of the duty turns on the facts known to the insurer at the inception of the lawsuit. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].) INA's burden on its motion was thus to establish that there is no triable issue of fact on its sole contention: that none of the allegations brought against Martin Marietta creates a potential for coverage.

### 2. *Contentions of the Parties*

Martin Marietta claims the potential for coverage as to each site under the policy provision which defines personal injury to include "wrongful entry or eviction, or other invasion of the right of private occupancy." INA contends that when read in the context of the entire policy, that clause provides coverage only for "classic landlord/tenant-type disputes." Under INA's interpretation, "wrongful entry or eviction" refers only to forcible eviction claims brought by one with a possessory interest in the land, and "other invasion of the right of private occupancy" extends that coverage to claims brought by occupants, rather than owners. INA also argues that claims asserted by governmental entities do not enforce private rights, and are therefore outside the grant of coverage, and that the coverage extends only to injury to the person and not to the property damage which INA contends is all that is at issue in the actions against Martin Marietta.

### 3. *Rules of Policy Interpretation*

■ In interpreting this insurance policy, we are governed by established rules. We interpret the policy as a whole, in a manner which gives force and effect to every clause. The fundamental goal is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs. If there is an ambiguity, it is construed against the party who caused the ambiguity to exist. This rule protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured. We generally interpret the coverage clauses of insurance polices broadly.

---

[5]Code of Civil Procedure section 437c, on summary judgment and summary adjudication, was amended subsequent to this motion, which was brought and decided in late 1991.

(*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d 807, 822; *Titan Corp.* v. *Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 473- 474 [27 Cal.Rptr.2d 476].) Emphasis on the expectations of the insured at the time the policy is entered into does not preclude coverage of forms of liability created after the formation of the policy. "The sole relevant inquiry in determining whether such types of liability are covered is whether, in view of the reasonable expectations of the insured, policy language can be interpreted to embrace the liability that may accrue under new statutory schemes." (*AIU Ins. Co.* v. *Superior Court, supra,* at p. 822, fn. 8.)

### 4. The Case Law

The clause we are called on to interpret is a common one, adopted by the insurance industry through the Insurance Services Organization as part of a standard broad form comprehensive general liability endorsement. (Lathrop, Insurance Coverage for Environmental Claims (1992) § 3.06[2], p. 3-64, fn. 9; Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation (The Rutter Group 1995) ¶ 7:1066, p. 7C-13.) The clause has been interpreted in a number of cases. A number of other cases cited to us interpret a revised version of the clause, adopted by the Insurance Services Organization as part of the 1986 standard form comprehensive general liability policy. That version omits the phrase "other invasion of the right of private occupancy" and defines personal injury as "injury, other than bodily injury, arising out of . . . The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor . . . ." (Lathrop, Insurance Coverage for Environmental Claims, *supra,* § 3.06[2], pp. 3-65, 3-67 fn. 21; Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 7:1112, p. 7C-21.)

We begin our review of the case law with the California cases which interpret "wrongful entry or eviction, or other invasion of the right of private occupancy" outside the context of pollution claims. We next review the few California cases which discuss personal injury coverage for pollution claims, and conclude with a review of the federal and out-of-state cases on that subject.

In general, the California cases on "wrongful entry or eviction or other invasion of the right of private occupancy" reject attempts to apply the coverage to claims other than those which concern an invasion of an interest

in real property. For example, in *Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766 [215 Cal.Rptr. 416], the lawsuit against the insured included the allegation that the insured was engaged in the sale of devices which intercepted Home Box Office (HBO) signals. The court rejected the insured's argument that the suit included a claim of violation of the HBO licensee's right to occupy the microwave channel, and was therefore covered under "other invasion of the right of private occupancy." The court cited the rule that words in an insurance policy are to be given their plain and ordinary meanings, and quoted a dictionary definition of "occupancy" as "the taking and holding possession of real property under a lease or tenancy at will." The court then noted that "the association of 'occupancy' with real property . . . is reinforced by its conjunction with the words 'wrongful entry or eviction,' " and concluded that, reading the clause as a whole, coverage was provided only for wrongful entry or eviction or other invasion of the right of private occupancy relating to some interest in real property. (*Id.* at pp. 775-776.)

Similarly, in *Waranch* v. *Gulf Insurance Co.* (1990) 218 Cal.App.3d 356 [266 Cal.Rptr. 827] the court found that "other invasion of the right of private occupancy" did not provide coverage for a claim of wrongful repossession of an automobile. The court reviewed case law from California and from other jurisdictions, concluding that no court had applied "other invasion of the right of private occupancy" outside the realm of real property. (*Id.* at p. 361; see also *Fragomeno* v. *Insurance Co. of the West* (1989) 207 Cal.App.3d 822 [255 Cal.Rptr. 111] [lessee not covered for alleged unlawful possession of leased premises since the cause of action sounds in contract, not tort].)

More recently, in *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492 [20 Cal.Rptr.2d 376], the insured sold asbestos-containing products which released asbestos fibers into the air, and sought coverage under a personal injury provision which covered "wrongful entry or eviction or other invasion of an individual's right of privacy," a clause somewhat different from the one before us here. The court first held that "In the world of liability insurance, personal injury coverage applies to injury which arises out of the commission of certain enumerated acts or offenses. [Citations.] Coverage thus is triggered by the offense, not the injury or damage which a plaintiff suffers. . . ." (*Id.* at p. 511; accord, *Legarra* v. *Federated Mutual Ins. Co.* (1995) 35 Cal.App.4th 1472, 1484 [42 Cal.Rptr.2d 101]; see also *Fragomeno* v. *Insurance Co. of the West, supra,* 207 Cal.App.3d at p. 832 (dis. opn. of Johnson, J.) [". . . the term personal [in 'personal injury'] is used in a highly specialized sense. It does not mean

physical damage to a person; rather it means injury arising out of one or more specified offenses," quoting 3 Cal. Insurance Law & Practice (1988) § 49.40[3], pp. 49-69].) The court also noted that "[t]o the extent the listed offenses are framed in generic terms, they should be construed broadly to encompass all specific torts which reasonably could fall within the general category." (16 Cal.App.4th at p. 515.)

*Fibreboard* next examined the phrase "wrongful entry," and rejected definitions proffered by the insurer which included the use or threat of force to dispossess, similar to the definition INA urges here. The court found that "[a]lthough wrongful entry can describe a trespass committed for the specific purpose of dispossessing the owner or occupant of the land, . . . it can also describe a more general, 'simple trespass' involving no intent to dispossess: ' "Every wrongful entry upon land in the occupation or possession of the owner constitutes a trespass . . . ." ' (*MacLeod* v. *Fox West Coast T. Corp.* (1937) 10 Cal.2d 383, 387 [74 P.2d 276].)" (16 Cal.App.4th at pp. 511-512.) In *Fibreboard*, however, the court found no coverage, since there was no direct or indirect entry by Fibreboard on the underlying plaintiffs' land, and a manufacturer does not commit a trespass through its products.[6]

These cases thus teach that under California law, the language "wrongful entry or eviction, or other invasion of the right of private occupancy" is limited to tort claims relating to the invasion of an interest in real property. "Wrongful entry" includes trespass claims, even if those claims do not involve an intent to dispossess. And, contrary to INA's argument here, personal injury coverage is not determined by the nature of the damages sought in the action against the insured, but by the nature of the claims made against the insured in that action. Under the policy definition, "[c]overage . . . is triggered by the offense, not the injury or damage which a plaintiff suffers." (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co., supra,* 16 Cal.App.4th at p. 511.) This conclusion is consistent with the policy language which obligates INA to pay "*all sums* which the Insured shall become legally obligated to pay as damages because of personal injury . . . ." (Italics added.)

With this summary in hand, we turn to the California cases which concern the application of personal injury coverage to pollution claims. INA argues that *Titan Corp.* v. *Aetna Casualty & Surety Co., supra,* 22 Cal.App.4th 457

---

[6]The *Fibreboard* court also found no coverage for nuisance claims. That court noted that the coverage in that policy, for " 'other invasion of an individual's right of privacy' " was addressed to "a distinctly different type of tort" than those addressed by the more usual clause (such as the one before us here) " ' "other invasion of the right of private occupancy." ' " (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co., supra,* 16 Cal.App.4th at p. 513.)

correctly decided the issue before us. That case found no coverage for pollution damages under a coverage clause identical to the one at issue here. However, unlike Martin Marietta's INA policy, the insurance policy under review in *Titan Corp.* contained a pollution exclusion which "unambiguously declared" that the policy would not pay for either bodily injury or property damage caused by pollution. (*Id.* at p. 474.) The reasoning and result in *Titan Corp.* depends in large part on that exclusion, and thus is in large part inapplicable here.

In *Titan Corp.*, the plaintiff made a claim on its insurer for indemnification for the cost of complying with an order issued by the New Jersey Environmental Protection Agency which required the cleanup of waste sludge, scrap material, and potential sources of groundwater contamination. In analyzing Titan's claim for coverage under the personal injury provision, the court cited principles of law requiring a contract to be read as a whole and interpreted in a manner which gives force and effect to every clause. The court reasoned that if the personal injury provision were read to cover third·party property damage caused by pollution, the pollution exclusion would never operate, an improper result. Reading the exclusion and the coverage provisions together, the court found that personal injury coverage was "limited to damages *other* than the injury to realty which an occupier of land may suffer when his quiet enjoyment of occupancy is disturbed." (22 Cal.App.4th at pp. 473-474.) It is clear that this analysis has no bearing on the case before us, since the policy before us has no pollution exclusion.

*Titan Corp.* went on to analyze cases from other jurisdictions concerning personal injury coverage for pollution damages, most of which interpreted policies which had pollution exclusions, and concluded that "[t]he term 'other invasion of the right of private occupancy' draws meaning and content from the preceding language: 'wrongful entry or eviction.' Such language connotes disruptions of the ability of a landowner to actually occupy his property, not mere injury to property. [Citation.] In brief, we do not believe it is objectively reasonable for an insured to expect 'personal injury' to mean 'property damage,' or to expect contamination of groundwater to harm either a 'private' right or an 'occupancy' right, or to expect that a blanket pollution exclusion will never operate." (22 Cal.App.4th at p. 476.) The court cited the rule of *ejusdem generis*; that where general words follow a specific enumeration, the general words should not be construed in their broadest sense but should be read as applying to the same general class of things as the specifically enumerated things. (*Id.* at pp. 474-476; see *id.*, fn. 14.) From this rule, the court concluded that " 'other invasion' should be interpreted to mean the functional equivalent of 'wrongful entry or eviction.' " (*Id.* at p. 475.)

In this alternative holding, *Titan Corp.* seems to depart from California law. First, to the extent that the case, by requiring "disruption of the ability of a landowner to actually occupy his property," would find no coverage for trespass or similar claims, it disagrees with *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.*, *supra*, 16 Cal.App.4th 492. Our own analysis, set out in greater detail later in this opinion, is that on this point, *Fibreboard* is correct. We also cannot agree that because the coverage is titled "personal injury" the insured could not reasonably expect the coverage to apply to acts which amount to trespass, nuisance, and similar causes of action. As we have seen, it is established California law that coverage under a personal injury provision is not determined by the damages sought from the insured, but by the nature of the tort claims alleged against it. (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co. supra*, at p. 511; *Legarra* v. *Federated Mutual Ins. Co. supra*, 35 Cal.App.4th at p. 1484.)

We would apply the rule of *ejusdem generis* differently: under that principle, "other invasion of the right of private occupancy," and "wrongful entry" can apply only to the general class of things to which "eviction" clearly belongs, that is, to claims relating to an invasion of an interest in real property. To read "other invasion of the right of private occupancy," "wrongful entry," and "eviction" as equivalents would violate another fundamental rule of contract interpretation, that each part of the policy must be given force and effect. (*Pico Citizens Bank* v. *Tafco, Inc.* (1958) 165 Cal.App.2d 739, 746 [332 P.2d 739]; *Union Oil Co.* v. *International Ins. Co.* (1995) 37 Cal.App.4th 930, 935 [44 Cal.Rptr.2d 4] [where policy ambiguous "an interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless"].) If "other invasion of the right of private occupancy" means only "wrongful entry or eviction," it has no meaning. As we explain later in this opinion, we do not so construe the policy.

*Titan Corp.*'s holding regarding the interaction between a pollution exclusion and personal injury coverage has been followed by two California cases. Although the issue is not directly before us, since Martin Marietta's INA policy has no pollution exclusion, the cases are of interest. In *Legarra* v. *Federated Mutual Ins. Co.*, *supra*, 35 Cal.App.4th 1472, the insured's policy contained a personal injury coverage clause identical to that before us, as well as a pollution exclusion. The insured sought coverage for a demand by the California Regional Water Quality Control Board for the cleanup of groundwater contamination on the insured's property. The court reviewed the California case law on personal injury coverage, and a number of federal and out-of-state cases which considered the application of that coverage to

pollution claims, and concluded that given the differing interpretations, the clause could be considered ambiguous if read in isolation, and that in the abstract the coverage might apply to pollution claims. (*Id.* at p. 1485.) That is, of course, the analytical problem before us: since Martin Marietta's policy has no pollution exclusion, the personal injury provision must be read "in isolation." In *Legarra*, however, court found that in light of the pollution exclusion and the rule of interpretation requiring the policy be interpreted as a whole, giving effect to every part, the personal injury provision did not provide coverage for pollution damage to real property. To hold otherwise would nullify the pollution exclusion, an improper result. (*Id.* at p. 1486.)

*Union Oil Co.* v. *International Ins. Co. supra,* 37 Cal.App.4th 930, concerned personal injury coverage for a lawsuit for damages caused by a leaking underground gasoline tank. The policy contained both a pollution exclusion and personal injury coverage for wrongful eviction, wrongful entry, and "violation of personal rights." Following *Titan Corp.*'s reasoning that a finding of coverage would render the pollution exclusion meaningless, the court found no duty. (*Id.* at p. 940.)

The parties have also cited a number of federal cases and cases from other jurisdictions. We begin with the cases cited by INA. Like *Titan Corp., supra, O'Brien Energy* v. *American Employers'* (1993) 427 Pa.Super. 456 [629 A.2d 957] and *Staefa Control-System* v. *St. Paul Fire & Marine Ins.* (N.D.Cal. 1994) 847 F.Supp. 1460, modified on rehearing at 875 F.Supp. 656, concluded that the existence of a pollution exclusion in the insurance policy meant that there was no personal injury coverage for pollution damages.

*W.H. Breshears, Inc.* v. *Federated Mut. Ins. Co.* (E.D.Cal. 1993) 832 F.Supp 288, affirmed in pertinent part, 38 F.3d 1219 (unpublished disposition), interpreted personal injury coverage for "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies," and found no coverage for a claim arising from a gasoline spill. *Breshears* based its holding in part on the policy's pollution exclusion, but also held, with little analysis, that the personal injury clause covered only offenses which "involve a claim by one person over another to the occupancy of property," and that wrongful entry takes place when someone other than the landlord claimed a possessory interest in a room, dwelling, or property. (832 F.Supp. at p. 291; see also *Gregory* v. *Tennessee Gas Pipeline Co.* (5th Cir. 1991) 948 F.2d 203, 209 [Louisiana law]; *East Quincy Services Dist.* v. *Continental Ins. Co.* (E.D.Cal. 1994) 864 F.Supp. 976, 980-982; and *Houston General Ins.* v. *AG Production Co.* (E.D.Cal. 1993) 840 F.Supp. 738, 744.)

*County of Columbia* v. *Continental Ins. Co.* (1994) 83 N.Y.2d 618 [612 N.Y.S.2d 345, 634 N.E.2d 946] found no personal injury coverage for a neighboring property owner's claim of trespass and nuisance, based on the contamination of its air, groundwater, and surface water by pollution emanating from a solid waste disposal site. The court relied in part on the existence of a pollution exclusion in the policy, and further found that the personal injury coverage reached only purposeful acts, not the "indirect and incremental harm" that results to property from pollution. The court found evidence of this limit in the other torts covered by the personal injury provision, such as false arrest, malicious prosecution, and defamation. (*Id.* at p. 349.) *Decorative Center* v. *Employers Cas.* (Tex.Ct.App. 1992) 833 S.W.2d 257, 261 found no coverage for a trespass claim, finding that "[t]he right of 'private occupancy' can only refer to those rights associated with an individual's act of inhabiting the premises, and not to rights associated with the individual's right to use and enjoy the inhabited premises." Apparently employing a standard different than the California mandate to protect the reasonable expectations of the insured, the court found that the clause was "meant to cover" only landlord-tenant claims.

Martin Marietta, too, cites a number of federal and out of state cases. *Titan Holdings Syndicate* v. *City of Keene, N.H.* (1st Cir. 1990) 898 F.2d 265 considered coverage for claims by neighbors of a city sewage treatment plant that they suffered from the odors, noise, and light emitted from the plant. One of the insured's policies included the coverage provision at issue here. The court found that, consonant with the ordinary meaning of the words "other invasion of the right of private occupancy," the allegations were covered, and that the insurer had a duty to defend, and, to the extent that any recovery was based on covered claims, to indemnify. (*Id.* at p. 272.) The court cited in support *Town of Goshen* v. *Grange Mut. Ins. Co.* (1980) 120 N.H. 915 [424 A.2d 822], which found coverage under "other invasion of the right of private occupancy" for a claim that a town planning board had, through zoning and other actions, deprived a landowner of the use and enjoyment of the land. (See also *Town of Stoddard* v. *Northern Sec. Ins. Co., Inc..* (D.N.H. 1989) 718 F.Supp. 1062.) Similarly, *City of Edgerton* v. *General Cas. Co.* (1992) 172 Wis.2d 518, 548-550 [493 N.W.2d 768, 780-781], reversed on other grounds at 184 Wis.2d 750 [517 N.W.2d 463], found that access to and use of an undefiled underground water supply is a right of private occupancy, and that a CERCLA action alleging that pollution emanating from the insured's landfill had contaminated adjacent groundwater was covered.

In *Hirschberg* v. *Lumbermens Mut. Cas.* (N.D.Cal.1992) 798 F.Supp. 600, 603, the allegations against the insured included causes of action for trespass

and nuisance, based on hazardous waste contamination of land. The court found personal injury coverage under a clause identical to the one before us here, reasoning that "other invasion of the right of private occupancy" is ambiguous, and that the ambiguity must be resolved against the insurer. The court then cited California law defining trespass as an invasion of the interest in the exclusive possession of land and defining nuisance as an interference with the interest in the private use and enjoyment of land. The court noted that the underlying complaint alleged interference with the comfortable use and enjoyment of property, and found a potential for coverage and a duty to defend.

*American States Ins. Co.* v. *Canyon Creek* (N.D.Cal. 1991) 786 F.Supp. 821, 828, also found the clause ambiguous. There, the insured, a business engaged in the sale of mobilehomes, was sued by homeowners groups which alleged that the insured had made misrepresentations which led the home-owners to believe that they would have the right to own and occupy the real property on which their mobilehomes were located. The court found a duty to defend under personal injury coverage which included "other invasion of the right of private occupancy," holding that the clause was at a minimum ambiguous, and that under California law the ambiguity would be resolved against the insurer. (*See also Gould Inc.* v. *Arkwright Mut. Ins. Co.* (M.D.Pa. 1993) 829 F.Supp. 722, 728 ["wrongful entry" and "other invasion of the right of private occupancy" ambiguous in the context of a policy which had pollution exclusion clause]; and *Beltway Management Co.* v. *Lexington-Landmark Ins.* (D.D.C. 1990) 746 F.Supp. 1145, 1150 ["other invasion of the right of private occupancy" ambiguous, encompasses violations of the warranty of habitability].)

*Pipefitters Welfare Educ. Fund* v. *Westchester Fire* (7th Cir. 1992) 976 F.2d 1037, 1041-1042 (Missouri and Illinois law) also found coverage for a pollution claim. In that case, the insured sold an electrical transformer as scrap. The transformer released gallons of toxic chemicals, and the insured was sued for the amount of cleanup costs incurred by the buyer under state and federal law, costs associated with restricted access to the site after a state environmental agency placed a seal order on the property, and other costs. The insurance company argued that the personal injury clause, in pertinent part identical to the one before us, covered only conduct undertaken by one claiming interest in the property and intended to deprive the other party of the right to occupy the property, similar to INA's arguments here. *Pipefitters* found that under relevant state law, "wrongful entry" is substantially similar to trespass, and that trespass does not require an intent to occupy. Therefore, the rule of *ejusdem generis* did not limit coverage under the "catch-all

phrase" regarding "other invasions" to conduct undertaken with a motive to deprive another of possession. Since the complaint against the insured arguably alleged an "other invasion," the court concluded that there was a duty to defend.

The Seventh Circuit returned to this question in *Scottish Guarantee Ins. Co., Ltd.* v. *Dwyer* (7th Cir. 1994) 19 F.3d 307, 310-312 (Wisconsin law). There, the court considered the insurance company's duty to defend a claim that chemicals released from the insured's insulation business property had contaminated neighbors' wells, in a policy which covered only wrongful entry or eviction. The court concluded that the phrase "wrongful entry" was at the very least ambiguous, and that unintentional trespass was covered.

Finally, *Blackhawk-Central City* v. *American Guaranty* (D.Colo. 1994) 856 F.Supp. 584, 590, considered claims of nuisance and trespass, based on a pollution emanating from a waste treatment facility, and held that there was a duty to defend. The court found that the pollution exclusion in several of the policies applied only to bodily injury and property damage coverages, and not to the personal injury coverage, which was similar to the clause before us here. The court found that wrongful entry was "substantially analogous" to trespass, that a person of ordinary intelligence would have understood the personal injury coverage to include trespass and nuisance claims, and that at the very least, "wrongful entry" was ambiguous and must be construed in favor of coverage.

### 5. *Policy Interpretation*

It is apparent that the federal and out-of-state cases lack a consensus of approach and of result. Many concern insurance policies which are in important ways different than the one we are called on to interpret. We base our ruling on the policy before us, and on the California rules of interpretation recited earlier in this opinion, and find that we cannot accept INA's contention that the coverage clause at issue is limited to "classic landlord/ tenant" claims.

Under California law, where words bear a simple and clear meaning, we apply that meaning. (*Bank of the West* v. *Superior Court, supra*, 2 Cal.4th at pp. 1264-1265.) ■ Applying this rule, it seems manifest that "wrongful entry," in the context of torts relating to the invasion of an interest in real property, includes trespass and may include nuisance, and that a reasonable insured would so understand the coverage. We also find that "other invasion of the right of private occupancy" is ambiguous, since it is susceptible to more than one interpretation. (See *Legarra* v. *Federated Mutual Ins. Co.,*

*supra*, 35 Cal.App.4th at p. 1485.) When construed, as it must be, in favor of the insured, the phrase may include nuisance claims and other of the claims brought against Martin Marietta.

INA argues that neither trespass nor nuisance claims are covered, because neither is among the torts specifically enumerated in the policy. However, the language of the policy clearly encompasses those causes of action, and there is no requirement, in the policy or in the law, that each covered cause of action be "specifically enumerated." Instead, the policy states that it covers claims based on eviction, and claims based on two other kinds of causes of action: wrongful entry, and invasions of the right of private occupancy other than eviction or wrongful entry. The terms are not defined in the policy, or in the law, but they are not on that account without meaning.

"Wrongful entry" is a term not altogether foreign to the law. Our Supreme Court long ago said, "It is elementary law, that every wrongful entry upon lands in the occupation or possession of the owner constitutes a trespass, . . ." (*Triscony* v. *Brandenstein* (1885) 66 Cal. 514, 515 [6 P. 384]; see also *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co. supra,* 16 Cal.App.4th at p. 512.) " 'The essence of the cause of action for trespass is an "unauthorized entry" onto the land of another.' [Citation.]" (*Cassinos* v. *Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1778 [18 Cal.Rptr.2d 574] [trespass where wastewater was injected from defendant's property to plaintiff's, interfering with plaintiff's mineral estate].) It is also established that "[i]nvasions of a plaintiff's property, otherwise amounting to a trespass, may also constitute a nuisance under the statutes." (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1136 [281 Cal.Rptr. 827]; *KFC Western, Inc.* v. *Meghrig* (1994) 23 Cal.App.4th 1167, 1181-1182 [28 Cal.Rptr.2d 676].)

Further, it is established that trespass and nuisance claims may include wrongful entry or invasion by pollutants. Trespass may be " 'by personal intrusion of the wrongdoer or by his failure to leave; by throwing or placing something on the land; or by causing the entry of some other person. . . .' " A trespass may be on the surface of the land, above it, or below it. (5 Witkin, Summary of Cal. Law (9th ed. 1990) Torts, § 604, p. 704.) The migration of pollutants from one property to another may constitute a trespass, a nuisance, or both. (*Cassinos* v. *Union Oil Co., supra,* 14 Cal.App.4th 1770, 1778; *Resolution Trust Corp.* v. *Rossmoor Corp.* (1995) 34 Cal.App.4th 93, 99 [40 Cal.Rptr.2d 328].) To agree with INA that "wrongful entry" does not include trespass and nuisance claims would fly in the face of this long-standing law.

INA contends that rather than referring to trespass and nuisance, "wrongful entry" requires proof that a defendant entered a plaintiff's land with force and violence or threats thereof, and with the intent to oust the plaintiff from possession. INA cites in support Code of Civil Procedure section 1159, which defines "forcible entry" for purposes of unlawful detainer proceedings, and *Jordan* v. *Talbot* (1961) 55 Cal.2d 597 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161] a case which discusses actions for forcible entry and detainer. Neither authority has application to the question before us here. The policy simply does not say "forcible entry," or indeed give any hint that only that claim will be covered. We decline to read into the policy terms and restrictions not expressly contained therein.

The conclusion that "wrongful entry" encompasses trespass and may encompass nuisance seems to us to be a straightforward one. "Other invasion of the right of private occupancy" is more complex, since neither party has cited any use of that term elsewhere in the law. In order to give force and effect to each word of the policy, the invasions referred to must be something other than eviction or wrongful entry. Under the rule of *ejusdem generis*, the invasions referred to must be similar to those involved in eviction and trespass claims.

INA argues that the definition of "occupancy" defeats coverage, arguing that occupancy "is an incident of ownership and connotes actual use," and citing in support a number of definitions of that word.[7] From this premise, INA argues that there is no coverage for the governmental claims against Martin Marietta, since the government does not occupy the groundwater. INA characterizes the claims as ones "seeking to protect the public's undivided, non-exclusive residual interest in groundwater." Similarly, INA urges that the use of the word "private" excludes coverage, because it means that the party claiming the right must "have a legal, exclusive, interest in the premises," something distinct from the government's interests in groundwater.

The argument misunderstands the undisputed facts regarding the claims against Martin Marietta. INA has not established that the government is seeking to enforce only a public or residual interest in groundwater. Instead, the undisputed facts indicate that the government claims include allegations

---

[7]Among the definitions cited is the dictionary definition cited by the court in *Nichols* v. *Great American Ins. Companies, supra*, 169 Cal.App.3d at page 775; " 'the taking and holding possession of real property under a lease or tenancy at will.' " As we have seen, *Nichols* cited the definition in support of its holding that " 'other invasion of the right of private occupancy' " was limited to claims which involve an allegation of invasion of an interest in real property, and was not otherwise concerned with the meaning of the word.

that pollutants emanating from Martin Marietta have contaminated the water wells and groundwater on land owned by individuals, businesses, and, perhaps, governmental entities. INA essentially argues that, even if a claim would be covered if brought by an individual property owner, the claim is not covered if it is brought by the government. INA cites no policy language which would support this argument, and we see none. We do not believe that a reasonable insured would have so understood the policy. Under the policy, it is not the identity of the plaintiff which determines coverage, but the allegations of the complaint.

It is apparent, too, that "occupancy" may be something other than an incident of ownership. Black's Law Dictionary defines "occupancy" as "[t]aking possession of property and use of the same. . . . e.g. of a tenant's use of leased premises," and defines "possession" as "[h]aving control over a thing with the intent to have and to exercise such control." (Black's Law Dict. (6th ed. 1990) pp. 1078, col. 2, 1163, col. 1.) The rights which attend occupancy may be, arguably, many.

"Invasion of the right of private occupancy" resembles the definition of nuisance, an " 'interference with the interest in the private use and enjoyment of the land.' " (*Wilson* v. *Interlake Steel Co.* (1982) 32 Cal.3d 229, 233 [185 Cal.Rptr. 280, 649 P.2d 922], quoting Rest.2d Torts, com. d to § 821D; see also Civ. Code, § 3279.) "The typical and familiar nuisance claim involves an activity or condition which causes damage or other interference with the enjoyment of adjoining or neighboring land." (*Wilshire Westwood Associates* v. *Atlantic Richfield Co.* (1993) 20 Cal.App.4th 732, 745 [24 Cal.Rptr.2d 562].) "Actual physical interference with land use constitutes the most obvious and common type of nuisance." (11 Witkin, Summary of Cal. Law, *supra*, Equity, § 126, p. 807.)

Fortunately, we need not determine the entire scope of coverage under the term. As to the issue before us, "other invasion of the right of private occupancy" is susceptible to numerous interpretations, and under California's rules of contract interpretation, it must be construed in favor of the insured.

INA disputes the existence of any ambiguity, but argues that if one exists, it must be construed against Martin Marietta, because as the author of the "unique structure of the insuring agreement," Martin Marietta caused the uncertainty to exist. INA cites in support the undisputed fact that Martin Marietta purchased only personal injury insurance from INA, and purchased other liability insurance elsewhere. ■ However, we depart from the

normal rule of interpretation, that ambiguities are interpreted in favor of coverage, only where there is "evidence that the provision in question was jointly drafted; merely showing that policy terms were negotiated, and that the insured had legal sophistication and substantial relative bargaining power, is not enough." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 738 [15 Cal.Rptr.2d 815].) As we have seen, Martin Marietta is not the author of the coverage provision, which is standard form language adopted by the insurance industry. We cannot see that Martin Marietta created any ambiguity, and we construe the language against the promissor, INA, and in favor of coverage. (*AIU Ins. Co.* v. *Superior Court*, *supra*, 51 Cal.3d at p. 822)

Finally, INA argues that in interpreting this contract, we must consider the undisputed fact that for the period of the INA policy, Martin Marietta also purchased a property damage liability policy. INA argues that Martin Marietta would not have purchased coverage for groundwater contamination claims in a personal injury policy, either in addition to or instead of the property damage policy, that the purchase of two policies suggests that Martin Marietta thought of the coverages as distinct, and that the expectation of the insured was that the INA policy would not cover claims which are based on groundwater contamination. The single undisputed fact does not compel the finding INA suggests. We do not know the terms of the property policy, or that it covers, and was intended to cover, the claims at issue. It is certainly possible for an insured to have duplicative coverage, or arguably duplicative coverage, either deliberately or inadvertently. Indeed, an entire body of law has developed to regulate that situation. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 97 [109 Cal.Rptr. 811, 514 P.2d 123].)[8]

### 6. *INA was not entitled to summary adjudication*

We now determine whether summary adjudication was properly granted, that is, whether INA has established that the claims against Martin Marietta include no potentially covered allegations. We conclude that INA has not met that burden.

The claims are based in part on trespass and nuisance. For instance, it is undisputed that the claim against Martin Marietta regarding the Stringfellow

---

[8]We note, too, that while INA characterizes the damages sought in the actions against Martin Marietta as property damage, the undisputed facts are not so clear. Martin Marietta has been ordered, inter alia, to obtain site access agreements, to supply alternate sources of water to residences and businesses, and to conduct well surveys, items not easily characterized as property damage.

site incorporated the government allegations made pursuant to nuisance statutes and common law theories, and that the intervener's claim, incorporated by reference into the claim against Martin Marietta, included a cause of action for nuisance. The consent order regarding the Dalles site specifically recites that it is in lieu of, inter alia, a nuisance claim. As we have seen, such claims raise a potential for coverage under "wrongful entry" and "other invasion of the right of private occupancy."

To the extent that the claims against Martin Marietta are, instead, brought pursuant to statutory provisions not in existence when the parties entered into the INA policy, "[t]he sole relevant inquiry . . . is whether, in view of the reasonable expectations of the insured, policy language can be interpreted to embrace the liability that may accrue under new statutory schemes." (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822, fn. 8.) In our view, on the undisputed facts, the claims against Martin Marietta are embraced by the policy language. For instance, at the Green River site, Martin Marietta has been ordered to remediate the contamination of wells on land owned by others. At both the Green River and Operating Industries sites, Martin Marietta has been required to obtain access agreements from other property owners, in order to clean up groundwater contamination. The Seymour recycling site consent order requires Martin Marietta to seal and abandon approximately 100 residential and business wells and to impose deed restrictions and other enforceable instruments restricting private residential or commercial use of property on or surrounding the site. The actions thus include allegations of wrongful entry and of invasions of the right of private occupancy in real property.

INA has not met its burden of establishing that there is no potential for coverage under the policy, and is not entitled to summary adjudication and judgment.

### *Disposition*

The judgment is reversed. Appellants to recover costs on appeal.

Turner, P. J., and Grignon, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 22, 1996. Kennard, J., was of the opinion that the petition should be granted.