[No. D024037. Fourth Dist., Div. One. Jan. 30, 1998.]

TINSELTOWN VIDEO, INC., et al., Plaintiffs and Appellants, v.
TRANSPORTATION INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Robert J. Kaplan and Richard H. Benes for Plaintiffs and Appellants.

McInnis, Fitzgerald, Rees & Sharkey and Richard J. Elliott for Defendant and Respondent.

## OPINION

**NARES, J.**—Plaintiffs Tinseltown Video, Inc. (doing business as Blockbuster Video), Gary Leonhard and Jeff D'Arcy (collectively, Tinseltown) appeal from various orders and a judgment on the pleadings entered in favor of defendant Transportation Insurance Company (Transportation). This appeal raises issues regarding the scope of personal injury liability coverage in a comprehensive general liability policy (policy) that Transportation issued to its insured Tinseltown, and whether Transportation owed a duty to defend Tinseltown against a third party lawsuit (the Chew action) brought against Tinseltown by partners (hereafter, the Chews) of a partnership which owned the video stores.

Specifically, we are asked to determine whether policy language insuring Tinseltown's liability for personal injury arising out of a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises," provided potential coverage for a "trespass" claim asserted in the Chew action alleging Tinseltown intermeddled with the Chews' use of the partnership's real property which consisted of two Blockbuster Video stores. The determination of this issue in turn requires us to determine the purely legal issue of whether the Chews' interest in the video stores was an interest in realty such that Tinseltown's liability (if any) for the alleged "trespass" was potentially covered under the policy; or whether the Chews' interest in the stores was personalty such that there was no "wrongful eviction from" or "wrongful entry into" real property, and thus no possibility of coverage under the policy and no duty on the part of Transportation to defend the Chew action.

Simply stated, the pivotal issue presented reduces to whether the Chews' allegedly trespassed-upon partnership interest in the video stores was an interest in realty or personalty.

## TINSELTOWN'S CONTENTIONS

Tinseltown appeals, contending that (1) the Chews' partnership interest in the Blockbuster Video stores was an interest in real property; (2) the Chews' responses to contention interrogatories in the Chew action show that the Chews have always contended Tinseltown trespassed upon real property; and thus (3) because the Chews' trespass cause of action potentially alleges Tinseltown interfered with the Chews' statutory right to possess the video stores, there existed a potential for personal injury liability coverage of the Chews' trespass claim under the policy at the time Transportation refused to defend the Chew action such that Transportation owed Tinseltown a duty to defend that action.

Tinseltown further contends (4) the court erred in denying Tinseltown's motion for an order summarily adjudicating that Transportation owed it a duty to defend the Chew action; (5) Tinseltown's insurance bad faith complaint against Transportation in the instant action states facts sufficient to constitute a cause of action and the court thus erred in entering judgment on the pleadings in favor of Transportation; and (6) the court abused its discretion in denying Tinseltown's motion for leave to amend its insurance bad faith complaint.

We disagree with these contentions. We hold that a partner's interest in partnership property of whatever character (realty or personalty) is an interest in personalty for all purposes. We also hold the Chews' statutory rights in

the partnership video stores do not include a personal right to sue a nonpartner third party (Tinseltown) for trespass damages; as a matter of law there was no possibility of coverage under the policy for the Chew action trespass claim against Tinseltown; and thus Transportation did not owe Tinseltown a duty to defend the Chew action.

Finally, we conclude the court properly denied Tinseltown's motion for summary adjudication on the duty to defend issue, properly granted Transportation's motion for judgment on the pleadings, and did not abuse its discretion in denying Tinseltown's motion for leave to file a first amended complaint. Accordingly, we affirm the judgment.

## FACTUAL BACKGROUND

The relevant material facts in this case are undisputed. On or about December 15, 1991, plaintiffs Gary Leonhard and Jeff D'Arcy formed plaintiff Tinseltown Video, Inc., a California corporation doing business as Blockbuster Video.[1]

### 1. *The policy*

Transportation issued to Tinseltown an insurance policy which included a "Commercial General Liability Coverage Form." The insuring agreement in the personal injury liability coverage clause is found in coverage B ("Personal and Advertising Injury Liability") of the policy and states in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this coverage part applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' or offense . . . ." The insuring agreement also provides in part: "This insurance applies to: [¶] (1) 'Personal injury' caused by an offense arising out of your business . . . [¶] . . . during the policy period." The term "personal injury" is defined as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: [¶] . . . c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor."

### 2. *The Chew third party action against Tinseltown*

In March 1993, while the policy was in effect, a third party action for money damages (the Chew action) was brought against Tinseltown (and

---

[1]For the sake of clarity, we again indicate we shall collectively refer to plaintiffs Tinseltown Video, Inc., Gary Leonhard and Jeff D'Arcy as Tinseltown.

others) in the San Diego County Superior Court.[2] The complaint was filed by Wilbur Chew and Barbara Chew (the Chews). In their first amended complaint the Chews allege nine causes of action, of which the following eight are directed against Tinseltown: specific recovery of personal property (second cause of action); intentional interference with contractual relations (third cause of action); conspiracy to intentionally interfere with contractual relations (fourth cause of action); conversion (fifth cause of action); conspiracy to commit conversion (sixth cause of action); trespass (seventh cause of action); conspiracy to commit trespass (eighth cause of action); and constructive trust (ninth cause of action).

The Chews claim they suffered economic losses resulting from a dispute with co-investors and Tinseltown in a business venture. Specifically, the Chews allege they had entered into a written partnership agreement with their co-investors Larry Young and Kathy Young (the Youngs) under which they and the Youngs acquired and operated two Blockbuster Video stores, one in Lake Elsinore, California, and the other in Temecula, California. The Chews further allege Tinseltown conspired with the Youngs to intentionally interfere with the Chews' contractual partnership relationship with the Youngs, and that Tinseltown entered into an agreement with the Youngs whereby the Youngs transferred all of the partnership assets to Tinseltown without the Chews' consent.

In connection with their second cause of action for recovery of personal property, the Chews allege they were "the owners of a 50% partnership interest in two Blockbuster Video Stores" in Riverside County, and they "had a 50% ownership interest in all of the assets of the partnership that owned said two Blockbuster Video Stores." In paragraphs 16 and 17 of their pleading the Chews characterize their interest in the partnership assets as *"personal property,"* and allege they "are, and at all times mentioned were, entitled to the immediate possession of the *personal property* described hereinabove." (Italics added.) In paragraph 18, they allege Tinseltown "wrongfully and without plaintiffs' consent took possession of the *personal property* described above. . . ." (Italics added). The Chews further allege that as a result of Tinseltown's "wrongful possession and detention of the *personal property* described above" they have suffered "loss of use and enjoyment of their *personal property*" (par. 19), "loss of the depreciation of their *personal property*" (par. 20), and "deterioration or business loss of their *personal property*" (par. 21). (Italics added.)

In their seventh cause of action for trespass (which is of central importance to this appeal) the Chews allege in paragraph 48: "48. . . . [D]efendants TINSELTOWN VIDEO, INC., GARY LEONHARD and JEFF D'ARCY, without plaintiffs' consent, took possession of the assets of two Blockbuster

---

[2]Chew v. Blockbuster Entertainment Corp. (Super. Ct. San Diego County, 1993, No. 668382) judgment entered June 2, 1995.

[V]ideo stores located in Lake Elsinore, California and Temecula, California, thereby intermeddling with plaintiffs' use of said property." In paragraph 49 the Chews also allege they are and were "the owners of the assets of the Blockbuster [V]ideo stores, and were entitled to actual possession of said assets," and they have suffered monetary damages as a result of Tinseltown's acts.

### 3. *Transportation's rejection of its insured Tinseltown's tender of the defense of the Chew action*

Tinseltown promptly requested that Transportation defend them in the Chew action. On or about April 30, 1993, Transportation refused to provide a defense.

## PROCEDURAL BACKGROUND

### 1. *Tinseltown's insurance bad faith complaint against its insurer Transportation*

In September 1994, Tinseltown filed a complaint against Transportation alleging causes of action for breach of insurance contract and tortious breach of the covenant of good faith and fair dealing. Tinseltown alleges in part that the third party complaint in the Chew action ". . . alleged facts . . . which 'potentially' fell within the personal injury coverage of the subject policy" (par. 9), and that "beginning sometime after April 30, 1993" Transportation breached its obligations under the policy it issued to Blockbuster by unreasonably refusing to defend Tinseltown in connection with the Chew action and by refusing to settle that action on Tinseltown's behalf (par. 13).

### 2. *Tinseltown's unsuccessful motions for summary adjudication and reconsideration*

On January 13, 1995, less than four months after it filed its complaint against Transportation (and before it conducted discovery regarding the Chews' contentions in the underlying Chew action), Tinseltown filed a noticed motion for summary adjudication seeking an order summarily adjudicating that Transportation had a duty to defend Tinseltown in the Chew action. Tinseltown contended (among other things) that Transportation's duty to defend the Chew action was triggered under the personal injury liability coverage provisions set forth in coverage B of the policy because the policy provided coverage for liability resulting from "wrongful entry" into the premises of another, and the complaint in the Chew action alleged that Tinseltown had committed the offense of trespass.

Transportation opposed the summary adjudication motion, but admitted all of the facts set forth in Tinseltown's separate statement of material facts. Transportation argued the "trespass" claim asserted against Tinseltown in the Chew action failed to allege an actionable trespass, and thus failed to trigger potential personal injury liability coverage under the policy, because the Chews' partnership interest in the video stores was an interest in *personal* property rather than in real property, and personal injury coverage under the policy could be triggered only by an "offense" involving an invasion to some interest in *real* property.

The court heard oral argument on Tinseltown's motion for summary adjudication and took the matter under submission. The court thereafter agreed with Transportation's argument and issued a minute order denying Tinseltown's motion, stating in part: "[A]s pleaded, the [t]respass is to the partnership interest, which is personalty . . . ."

Tinseltown filed a timely motion for reconsideration of the court's order denying its motion for summary adjudication of the duty to defend issue. Transportation opposed the motion on the ground Tinseltown had failed to meet its statutory burden of presenting new or different facts, circumstances or law. After hearing oral argument the court took the matter under submission and thereafter denied the motion in a minute order.

3.  *The Chews' responses to Tinseltown's contention interrogatories in the Chew action*

After the court denied Tinseltown's motions for summary adjudication and reconsideration, Tinseltown propounded contention interrogatories in the underlying Chew action. On April 14, 1995, the Chews served their interrogatory responses in which they stated they were contending Tinseltown had "trespassed upon specific partnership real property" by "unlawfully interfer[ing] with the leasehold interests which provided the CHEWS the right of possession of two Blockbuster [V]ideo stores located in Lake Elsinore and Temecula, California."

4.  *Transportation's successful motion for judgment on the pleadings and Tinseltown's unsuccessful motion for leave to file a first amended complaint*

On April 10, 1995, before the Chews served their responses to the contention interrogatories propounded by Tinseltown in the Chew action, Transportation moved for judgment on the pleadings in the instant case on the ground Tinseltown's complaint failed to state facts sufficient to constitute a cause of action. Tinseltown filed written opposition to the motion and

directed the court's attention to the extrinsic evidence showing the Chews were contending Tinseltown had "trespassed upon specific partnership real property." Tinseltown urged the court to deny without prejudice Transportation's motion for judgment on the pleadings and grant Tinseltown leave to file its proposed first amended complaint which set forth verbatim the Chews' responses to Tinseltown's contention interrogatories.

Tinseltown also filed a formal noticed motion for leave to file its proposed amended complaint. In addition to alleging verbatim the Chews' responses to Tinseltown's contention interrogatories, the proposed amended pleading alleged the Chews had contended from the date they filed their complaint against Tinseltown in the Chew action that Tinseltown had trespassed upon partnership *real* property, and thus Transportation had breached its contractual obligations to Tinseltown *beginning in April 1993* by refusing to defend or settle the Chew action.

On May 26, 1995, after hearing oral argument, the court granted Transportation's motion for judgment on the pleadings and denied Tinseltown's motion to amend without prejudice.[3]

The court thereafter entered a formal "Order for Judgment on the Pleadings" which ordered that "[j]udgment be entered in favor of defendant and against plaintiffs." This same order was entered in the judgment book in lieu of a separate judgment.

## Discussion

As we discussed above, Tinseltown's appeal raises issues regarding the scope of personal injury coverage provided in the comprehensive general liability policy Transportation issued to Tinseltown, and whether Transportation owed a duty to defend the Chew action in which the Chews allege Tinseltown wrongfully acquired the Chews' partnership interest in the two Blockbuster Video stores. Specifically, we must determine whether the policy language insuring Tinseltown's liability for personal injury caused by a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises" provided potential

---

[3]The court's minute order dated May 26, 1995, denying Tinseltown's motion to amend without prejudice also stated: "As currently pleaded, the proposed first amended complaint purports to allege a duty to defend arising prior to 4-14-95, the date Wilbur Chew served the response to contention interrogatory #28; such pleading is foreclosed by this court's ruling on the summary adjudication. In addition, no evidence is supplied on which the court could base a finding of mistake, inadvertence or excusable neglect, or the discovery of new information that was not reasonably available when the original pleading was drafted. Finally, [plaintiffs] fail[] to comply with C[alifornia]R[ules of]C[ourt] 327."

coverage for the "trespass" claim asserted in the Chew action which alleges Tinseltown intermeddled with the Chews' use of the video stores.

As we have also noted, the determination of this issue in turn requires us to determine the purely legal issue of whether the Chews' interest in the video stores was an interest in *realty* such that any liability of Tinseltown for the alleged "trespass" was potentially covered under the policy, or whether the Chews' interest in the stores was an interest in *personalty* such that there was no "wrongful eviction from" or "wrongful entry into" real property, and thus no possibility of coverage under the policy and no duty on the part of Transportation to defend the Chew action.

Simply stated, because the material facts are undisputed the pivotal (and dispositive) issue presented in this appeal reduces to the purely legal question of whether the Chews' allegedly trespassed-upon partnership interest in the video stores was an interest in realty or personalty.[4] If the Chews' partnership interest in the stores was an interest in *realty*, we must conclude both that Transportation owed Tinseltown a duty to defend the Chew action as a matter of law, and that the court erred in denying Tinseltown's motion for summary adjudication and in granting Transportation's motion for judgment on the pleadings. Conversely, if the Chews' partnership interest in the stores was an interest in *personalty*, we must conclude that Transportation did not owe Tinseltown a duty to defend the Chew action, and thus the court's rulings on those motions were proper.

For reasons we shall discuss we hold the Chews' partnership interest in the video stores was an interest in personalty for all purposes; its statutory right to possession of the stores did not include a personal right to sue a nonpartner third party (Tinseltown) for trespass damages; there was no possibility of coverage under the policy for the trespass claim alleged against Tinseltown in the Chew action; and thus Transportation did not owe Tinseltown a duty to defend the Chew action. We further hold the court properly denied Tinseltown's motion for summary adjudication, properly granted Transportation's motion for judgment on the pleadings, and did not abuse its discretion in denying Tinseltown's motion for leave to file a first amended complaint.

---

[4]Tinseltown phrases this issue as follows: "The pivotal issue raised in this appeal—a pure question of law—is whether the lawsuit against the insureds was 'potentially' or 'possibly' alleging that the insureds committed a trespass to real property. If the answer to that question is 'yes,' the trial court prejudicially erred in denying the insureds' motion for summary adjudication of the 'duty to defend' issue and in granting Transportation's motion for judgment on the pleadings."

### I

### *General Principles Applicable to the Duty to Defend*

■ Because this appeal raises the issue of whether Transportation owed Tinseltown a duty to defend the underlying Chew action, we begin our analysis by reviewing the legal principles governing an insurer's duty to defend a third party claim brought against its insured. In *General Accident Ins. Co.* v. *West American Ins. Co.* (1996) 42 Cal.App.4th 95, 102 [49 Cal.Rptr.2d 603], the court recently summarized these principles:

"The Supreme Court has recently reaffirmed the long-standing principles applicable to an insurer's duty to defend. 'It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. . . . [T]he duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. . . . [¶] . . . [¶] Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor.' (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) 'The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score. [Citations.]' (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295-296 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose I*).)

"In *Montrose I*, the Supreme Court reiterated that the insured need only show the bare possibility of coverage to trigger a defense duty. (*Montrose I, supra*, 6 Cal.4th at p. 300.) To prevail in an action seeking declaratory relief on the issue of the duty to defend, '. . . the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.' (*Ibid.* at p. 300.)" (Fn. omitted.)

### II

### *General Principles Applicable to Personal Injury Liability Coverage*

■ As we discussed above, this appeal also raises issues regarding the scope of personal injury liability coverage provided in the policy. The court

in *General Accident Ins. Co.* v. *West American Ins. Co., supra,* 42 Cal.App.4th at page 103, summarized the legal principles that apply to insurance coverage for personal injury liability:

"Unlike liability coverage for property damage or bodily injury, personal injury coverage is not based on an accidental occurrence. Rather, it is triggered by one of the offenses listed in the policy. 'In the world of liability insurance, personal injury coverage applies to injury which arises out of the commission of certain enumerated acts or offenses. [Citations.] Coverage thus is triggered by the offense, not the injury or damage which a plaintiff suffers.' (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 511 [20 Cal.Rptr.2d 376].) '[T]he term personal [in personal injury] is used in a highly specialized sense. It does not mean physical damage to a person; rather it means injury arising out of one or more specified offenses.' (3 Cal. Insurance Law & Practice. (1988 rev.) § 49.403, p. 49-69.)

"Personal injury coverage, intended to broaden coverage from the confines of bodily injury or property damage, has been applied to a wide variety of claims. (Pasich, *Advertising Injury and Personal Injury Coverage,* in 2 Ostrager & Newman, 11th Annual Insurance, Excess, and Reinsurance Coverage Disputes (Practicing Law Institute (Jan./Feb. 1994) p. 309).) 'To the extent the listed offenses [in the policy] are framed in generic terms, they should be construed broadly to encompass all specific torts which reasonably could fall within the general category.' (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co., supra,* 16 Cal.App.4th at p. 515.)"

### III

*Transportation's Commercial General Liability Policy[5]*

Transportation issued to Blockbuster an insurance policy which included a "Commercial General Liability Coverage Form." The insuring agreement in the personal injury liability coverage clause is found in coverage B ("Personal and Advertising Injury Liability") of the policy and states in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this coverage part applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' or offense . . . ." The insuring agreement also provides in part: "This insurance applies to: [¶] (1) 'Personal injury' caused by an offense arising out of your

---

[5]For the sake of clarity we repeat here our previous discussion of the policy which appears in the "Factual Background" section of this opinion.

business . . . [¶] . . . during the policy period." The term "personal injury" is defined as: ". . . [I]njury, other than 'bodily injury,' arising out of one or more of the following offenses: [¶] . . . c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor."

## IV

*The Chews' Partnership Interest in the Video Stores Was and Is an Interest in Personality*

With regard to the central issue presented in this appeal—whether the Chews' partnership interest in the video stores was an interest in personalty or realty—Tinseltown contends that under applicable statutory and case law the Chews' partnership interest in the Blockbuster Video stores was an interest in real property, and thus there is, and at all relevant times has been, a potential for personal injury liability coverage of the Chews' trespass claim under the policy. We disagree.

The issue of whether a partner's "interest in a partnership" is real property or personal property is squarely addressed by Corporations Code[6] section 15026, which provides that a partner's interest in the partnership is personal property: "A partner's interest in the partnership is his share of the profits and surplus, and the same is *personal property*." (Italics added.)

In enacting section 15026, the Legislature adopted section 26 of the Uniform Partnership Act, which is identical to section 15026. (See Historical and Statutory Notes, 24A West's Ann. Corp. Code (1991 ed.) § 15026, p. 499.) According to one authority, the drafters of the Uniform Partnership Act intended that section 26 establish the "English rule" of regarding the interest of a partner in the partnership as personal property, irrespective of the physical character of the property, for all purposes. (Annot., Effect of § 26 of Uniform Partnership Act as converting realty into personalty (1961) 80 A.L.R.2d 1107-1108.) In California it is well established that the partnership interest held by a copartner is treated in equity as personalty notwithstanding that the partnership property may consist of realty. (*Comstock* v. *Fiorella* (1968) 260 Cal.App.2d 262, 266 [67 Cal.Rptr. 104].) We hold that a partner's interest in partnership property of whatever character (realty or personalty) is an interest in personalty for all purposes.

To reinforce its contention that the Chews' partnership interest in the video stores was an interest in real property, Tinseltown points out that on

---

[6]Subsequent statutory references are to the Corporations Code unless otherwise specified.

April 14, 1995, the Chews served their contention interrogatory responses in the Chew action stating they were and are contending that Tinseltown had "trespassed upon specific partnership *real property*" by "unlawfully interfer-[ing] with the leasehold interests which provided the [Chews] the right of possession of two Blockbuster [V]ideo stores located in Lake Elsinore and Temecula, California . . . ." (Italics added.) The Chews' contention interrogatory responses do not change our analysis. The responses are not relevant to the purely legal issue of whether the Chews' interest in the partnership's real property is deemed personalty. Accordingly, we conclude the Chews' partnership interest in the two Blockbuster Video stores is an interest in personalty, not an interest in realty.

V

*The Chews' Statutory Right to Possession of the Partnership's Video Stores Did Not Include a Personal Right to Sue a Nonpartner Third Party (Tinseltown) for Trespass Damages*

Tinseltown contends that the Chews' "trespass" cause of action potentially alleges that Tinseltown interfered with the Chews' statutory right to possess the video stores, which are real property, and thus there existed a potential for personal injury liability coverage of the Chews' trespass claim under the policy at the time Transportation refused to defend the Chew action such that Transportation owed Tinseltown a duty to defend the Chew action. We disagree.

Tinseltown relies first on section 15024 ("Property rights") which provides: "The property rights of a partner are (1) *his rights in specific partnership property*, (2) his interest in the partnership, and (3) his right to participate in the management." (Italics added.)

Tinseltown correctly asserts the first enumerated "property right" set forth in section 15024 (i.e., a partner's rights "in specific partnership property") is defined more specifically in section 15025 ("Ownership of specific partnership property"), subdivisions (1) and (2)(a), as follows:

"(1) A partner is coowner with the other partners of specific partnership property holding as a tenant in partnership.

"(2) The incidents of this tenancy are such that:

"(a) *A partner*, subject to the provisions of this chapter and to any agreement between the partners, *has an equal right with the other partners to possess specific partnership property for partnership purposes*; but a partner has no right to possess such property for any other purpose without the consent of the other partners." (Italics added).

Tinseltown thus contends that the Chews, as alleged "tenants in partnership" with their former partners the Youngs under section 15025, subdivision (1), had a statutory right under section 15025, subdivision (2)(a), to possess specific partnership property, including the partnership real property which consisted of the two Blockbuster Video stores. Tinseltown also maintains that "[t]he 'assets' of the two Blockbuster [V]ideo stores that [Tinseltown] allegedly intermeddled with would clearly encompass the real property leases, which give the Chews the right to possess the two stores," and thus "the Chews' trespass cause of action *potentially* alleges that [Tinseltown] interfered with the Chews' right to possess specific partnership *real property*, *viz.*, the two Blockbuster [V]ideo stores. . . ." (Italics in original.)

We disagree, and begin our analysis by noting that a partner's "rights in specific partnership property" within the meaning of sections 15024 and 15025 (discussed *ante*) are distinct from his or her "interest in the partnership" within the meaning of section 15026 (discussed *ante*). (*Evans* v. *Galardi* (1976) 16 Cal.3d 300, 307, fn. 8 [128 Cal.Rptr. 25, 546 P.2d 313]; *Hellman* v. *Anderson* (1991) 233 Cal.App.3d 840, 846 [284 Cal.Rptr. 830].)

We agree with Tinseltown that the Chews, as copartners of the Youngs, had statutory rights in the property of the partnership under sections 15024 and 15025, including an equal right shared with the Youngs to possess "specific partnership property" for partnership purposes. We also agree that this right to possess "specific partnership property" included the right to possess the partnership realty consisting of the two video stores.

However, in our view neither section 15024, nor section 15025, nor any other statutory or case authority confers upon a copartner (here, the Chews) a personal, private right of action in tort to sue a nonpartner third party (here, Tinseltown, which was not a copartner of the Chews) for a "trespass" to, or interference with, that copartner's statutory right to possess partnership real property. Although subdivision (1) of section 15025 (discussed *ante*) states that "[a] partner is *coowner* with the other partners of specific partnership property holding as a tenant in partnership" (italics added), partnership real property acquired "on account of the partnership" is owned by the partnership, not by the partners individually. As the court explained in *Bartlome* v.

*State Farm Fire & Casualty Co.* (1989) 208 Cal.App.3d 1235, 1240 [256 Cal.Rptr. 719]:

". . . California law treats a partnership as a 'hybrid' organization that is viewed as an aggregation of individuals for some purposes, and as an entity for others. [Citation.] One of the primary areas in which a partnership is viewed as an entity is with respect to ownership of property. California Corporations Code section 15008[7] specifically provides that a partnership may hold title to real property, and further defines any property, real or personal, that is acquired 'on account of the partnership,' as partnership property.

"California Corporations Code section 15025 defines an individual partner's interest in specific partnership assets. Section 15025 begins by stating that '[a] partner is coowner with the other partners of specific partnership property holding as a tenant in partnership'; however, the restrictions placed on an individual partner's interest in partnership property by section 15025 are all encompassing. The section states that a partner has no right to possess specific partnership property for nonpartnership purposes without the consent of his fellow partners; it prohibits a partner from assigning or selling his interest in specific partnership property without the consent of his partners; it prohibits enforcement of a money judgment against specific partnership property in connection with the debt of an individual partner; it requires that the right to specific partnership property vests in surviving partners rather than in the estate of a deceased partner; and it states that specific partnership property is not the community property of any individual partner. Thus, *most of the normal incidents of ownership are held by the partnership as a group rather than the individual partners.*" (Italics added.)

In the more recent decision in *Munkdale v. Giannini* (1995) 35 Cal.App.4th 1104, 1111, footnote 6 [41 Cal.Rptr.2d 805], the court agreed with this analysis: "In all material respects, California Corporations Code section 15025 is identical to section 25 of the Uniform Partnership Act, a provision which has been described as follows: 'Although stating that each partner is a co-owner of the partnership property, [§ 25 of the Uniform Partnership] Act systematically destroys the usual attributes of ownership . . . . Functionally, despite the literal language, the partnership owns its

---

[7]Section 15008 provides:

"(1) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property.

"(2) Unless the contrary intention appears, property acquired with partnership funds is partnership property."

property and the partners do not. The Act would be better if it conceded this rather than accomplishing it by indirection.' (*Employers Cas. Co.* v. *Employers Commercial Union* (5th Cir. 1980) 632 F.2d 1215, 1219-1220.) This description of ownership of partnership property was adopted by Division One of this court in *Bartlome* v. *State Farm Fire & Casualty Co., supra*, 208 Cal.App.3d at pages 1241-1242." (Italics omitted.)

Here the Chews, as alleged copartners with the Youngs in a partnership that acquired the two Blockbuster Video stores "on account of the partnership," are personally seeking to recover money damages for Tinseltown's alleged "trespass" which consisted of "intermeddling" with the Chews' "use" of the video stores.[8] In paragraph 49 of their complaint, the Chews allege that they are and were "*the owners of the assets of the Blockbuster [V]ideo stores*, and were entitled to actual possession of the same," and that they have suffered monetary damages as a result of Tinseltown's acts. (Italics added.)

Based on the undisputed facts in this case, we conclude as a matter of law that the partnership video stores were owned by the partnership, not by the Chews, at the time Tinseltown allegedly "trespassed" upon the Chews' statutory right to equal possession of the stores, and thus the Chews had no personal, private right to sue Tinseltown in tort for trespass damages. A copartner's statutory right to possession of partnership realty does not derive from the copartner's ownership of the realty, which is owned not by the copartner, but by the partnership. The copartner's right to possession of partnership realty also does not derive from a leasehold interest or any other cognizable interest in that property. The copartner's possessory interest in partnership realty is an incident of the copartner's interest in the partnership, which under section 15026 is an interest in personalty.

*General Accident Ins. Co. v. West American Ins. Co. is factually distinguishable*

Tinseltown's reliance on *General Accident Ins. Co.* v. *West American Ins. Co., supra*, 42 Cal.App.4th 95, is misplaced. *General Accident* involved a third party complaint which alleged the insureds "ousted" and "ejected" the plaintiff from premises which were leased in the plaintiff's name. The

---

[8]In their first amended complaint against Tinseltown, the Chews allege in their seventh cause of action for trespass: "48. . . . [D]efendants TINSELTOWN VIDEO, INC., GARY LEONHARD and JEFF D'ARCY, without plaintiffs' consent, took possession of the assets of two Blockbuster [V]ideo stores located in Lake Elsinore, California and Temecula, California, *thereby intermeddling with plaintiffs' use of said property*." (Italics added.)

principal issue in the case was whether this allegation created the potential for coverage under the policy definitions of personal injury found in the two subject policies: " '[W]rongful entry or eviction, or other invasion of the right of private occupancy,' " and " 'wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies . . . .' " (*Id.* at p. 101.)

In holding there was a potential for coverage and the insurers thus had a duty to defend their insureds, the Court of Appeal in *General Accident* reasoned that although the third party complaint did not allege a trespass, it did allege the defendant insureds ousted the plaintiff and interfered with his right to occupy the premises under the lease, which was in his own name, and thus the complaint alleged an invasion of an interest in real property. (*General Accident Ins. Co.* v. *West American Ins. Co.*, *supra*, 42 Cal.App.4th at pp. 104-105.)

*General Accident* is factually distinguishable in that the third party plaintiff held the real property lease in his own name, whereas here the third party plaintiffs (the Chews) had no such real property interest in their own names, but merely held a statutory right to equal possession of two Blockbuster Video stores incident to their personalty interest in the partnership which owned the stores.

## VI

*As a Matter of Law There Was and Is No Potential Personal Injury Liability Coverage Under the Policy for the "Trespass" Claim Alleged Against Tinseltown in the Chew Action*

Because for reasons we discussed above the Chews' partnership interest in the video stores was an interest in personalty, not an interest in realty, and because the Chews have no personal right to sue Tinseltown for recovery of trespass damages, we conclude as a matter of law that the Chews have not stated and cannot state facts sufficient to constitute a cause of action for trespass against Tinseltown.

Consequently, we also conclude as a matter of law there is no potential personal injury liability coverage under the policy for the "trespass" claim the Chews have asserted against Tinseltown in the underlying Chew action. As we discussed above, the term "personal injury" is defined in the policy

as: "[I]njury, other than 'bodily injury,' arising out of one or more of the following offenses: [¶] . . . c. The *wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises* that a person occupies by or on behalf of its owner, landlord or lessor." (Italics added.) Because the Chews cannot show a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises," Tinseltown as Transportation's insured cannot establish a potential for personal injury liability coverage under the policy.

VII

*Because the Gravamen of the Chew Action Is a Claim for Economic Loss, the Chews' Derivative Claim for "Trespass" Tort Damages Is Not Potentially Covered by the Comprehensive General Liability Policy*

That there is no potential for personal injury liability under the policy as a matter of law is in our view also established by the fact that the gravamen of the underlying Chew action is a claim for alleged economic losses for which there is no coverage under the policy. In their complaint against Tinseltown, the Chews have alleged eight causes of action[9] in which the alleged damages primarily consist of economic losses. For example, in their second cause of action for recovery of personal property, the Chews allege that as a result of Tinseltown's "wrongful possession and detention" of "personal property" which included their "50% partnership interest in two Blockbuster Video Stores," they have suffered "loss of use and enjoyment of their *personal property*," "loss of the depreciation of their *personal property*," and "deterioration or business loss of their *personal property*." (Italics added).

As we have discussed, personal injury coverage is triggered by the commission of one or more specified offenses rather than by an injury or damage which a plaintiff has suffered. (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 511 [20 Cal.Rptr.2d 376].) Here, however, while we conclude Tinseltown cannot show the commission of an offense that would trigger personal injury coverage, the fact that the gravamen of the Chew action is a claim for economic losses is further evidence Tinseltown cannot show a potential for such coverage.

---

[9]The eight causes of action the Chews allege against Tinseltown are: specific recovery of personal property (second cause of action), intentional interference with contractual relations (third cause of action), conspiracy to intentionally interfere with contractual relations (fourth cause of action), conversion (fifth cause of action), conspiracy to commit conversion (sixth cause of action), trespass (seventh cause of action), conspiracy to commit trespass (eighth cause of action), and constructive trust (ninth cause of action).

# VIII

## *The Court Properly Denied Tinseltown's Motion for Summary Adjudication and Properly Granted Transportation's Motion for Judgment on the Pleadings*

Tinseltown's unsuccessful motion for summary adjudication sought an order summarily adjudicating that Transportation had a duty to defend Tinseltown in the Chew action. Transportation's successful motion for judgment on the pleadings was based on the ground that Tinseltown's insurance bad faith complaint failed to state facts sufficient to constitute a cause of action because the court had ruled against Tinseltown on the issue of whether Transportation owed Tinseltown a duty to defend the Chew action.

We independently review the court's rulings on these motions and conclude that because for reasons discussed above Tinseltown has not and cannot show a potential for personal injury liability coverage under the policy, the court properly denied Tinseltown's motion for summary adjudication, and also properly granted Transportation's motion for judgment on the pleadings. We need not and do not address Tinseltown's contention that "the denial of [Tinseltown's] motion for summary adjudication did not *ipso facto* entitle Transportation to judgment on the pleadings."

# IX

## *The Court Did Not Abuse Its Discretion in Denying Tinseltown's Motion for Leave to File Its Proposed First Amended Complaint*

Finally, we conclude the court did not abuse its legal discretion in denying Tinseltown's motion for leave to file a first amended complaint.[10] Tinseltown sought to amend its original complaint to allege verbatim the Chews' responses to Tinseltown's contention interrogatories in which the Chews stated they had contended from the date they filed their complaint against Tinseltown in the Chew action that Tinseltown had trespassed upon partnership *real* property. Tinseltown sought leave to allege that these discovery responses showed that Transportation had breached its contractual obligations to Tinseltown beginning in April 1993 by refusing to defend or settle

---

[10]Transportation asserts the court did grant Tinseltown leave to amend the complaint, but Tinseltown declined the opportunity. We reject this assertion. The court's minute order dated May 26, 1995, indicates the court did deny Tinseltown's motion to amend the complaint "without prejudice."

the Chew action. As we discussed above, the Chews' contention interrogatory responses do not create a potential for personal injury liability coverage under the policy, and thus are not relevant.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied February 24, 1998.