[No. G014436. Fourth Dist., Div. Three. Jan. 31, 1996.]

GENERAL ACCIDENT INSURANCE COMPANY, Plaintiff and Appellant, v.
WEST AMERICAN INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Schaffer & Lax and John H. Horwitz for Plaintiff and Appellant.

Ault, Deuprey, Jones & Gorman, Robert P. Coffin, R. Michael Jordan, Sedgwick, Detert, Moran & Arnold, Mark Graf, Lane J. Ashley and Kristin E. Meredith for Defendants and Respondents.

**OPINION**

**WALLIN, J.**—General Accident Insurance Company filed a declaratory relief action against Aetna Casualty & Surety Company and West American

Insurance Company, seeking a declaration of coverage and reimbursement for defense and settlement costs it incurred while defending a complaint tendered to all three insurers. Aetna and West American refused the tender of defense of the underlying complaint. General Accident not only accepted the tender from its insured, but agreed to defend the insureds of Aetna and West American under an assignment of their rights against their insurers; it also contributed to the settlement on behalf of the insureds of all three carriers. Summary judgment on the declaratory relief action was granted in favor of Aetna and West American, and General Accident appeals on the duty to defend issue only. We find a duty to defend as a matter of law and reverse.

On April 11, 1989, Donald Owens filed a complaint for damages against, among others, Sportsman Associates, Inc. (SAI), Hall & Powell Insurance Services, Inc. (H&P), and Sportsman, Hall and Powell, Inc. (SHP).[1] Owens alleged that in 1983, he was president and part owner of an insurance agency known as the Escondido agency. In November of that year, he sold the agency to Glenfed Insurance Services and stayed on as its manager. In April 1988, Owens was approached by certain of the underlying defendants with a proposal that he join with H&P and SAI in an insurance business venture. Owens and the defendants agreed: (1) Owens would repurchase the Escondido agency from Glenfed; (2) a new corporation, SHP, would be formed to acquire and operate the agency, and the owners of SHP would be Owens, SAI and H&P; and (3) Owens would serve SHP as its president and be employed by it as the manager of the Escondido agency.

In June 1988, Owens purchased the Escondido agency with a down payment of $44,000 provided by defendant Murray Sportsman and signed a promissory note for the balance of the purchase price, $220,000. Among the assets Owens received in the purchase was Glenfed's lease of the premises occupied by the agency. Thereafter, Owens operated the agency as its manager.

In November 1988, SHP had its first formal meeting at which Owens was elected president, and shares of common stock were issued in the amounts of 325 shares to SAI, 325 to H&P, and 70 to Owens. Contrary to their previous representations, however, SAI and H&P failed to cause SHP to acquire the assets of the agency or to assume the lease from Owens.

On January 20, 1989, Owens was summarily terminated as manager of the agency and as president of SHP. After that date, the underlying defendants

[1]These defendants were insured, respectively, by General Accident, Aetna, and West American.

"privately, for their own benefit and refusing to allow the participation of Owens, operated the Escondido agency in the following manner: [¶] (a) Occupying the premises leased to Owens; [¶] (b) Employing the files and records of the Escondido agency purchased from Glenfed and owned by Owens; [¶] (c) Contacting the agency's clients and advising the insureds that [SHP was] the owner[] of the agency and that Owens was no longer associated with the business; and [¶] (d) Receiving the income from the agency and disbursing the same as funds owned by said defendants."

Based on these allegations, Owens stated the following causes of action against the defendants: wrongful termination, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, interference with contractual relations and interference with prospective economic advantage. Regarding the continued operation of the Escondido agency by the defendants, Owens sought the remedies of constructive trust, accounting, appointment of a receiver and injunctive relief. He also sought the involuntary dissolution of SHP and the cancellation of its stock issuance.

Under the cause of action for interference with contractual relations, Owens alleged the defendants disrupted his relationship with Glenfed by "causing [his] performance in respect of the contract with Glenfed to be impossible or, at least, impracticable for the reason that [he] has been ousted from the Escondido agency by said defendants, denied all the benefits of the insurance business purchased from Glenfed and manipulated by defendants into a position which prevents [him] from paying the purchase price owed to Glenfed." The allegation of ouster was repeated under the cause of action for interference with prospective economic advantage. Under the cause of action for intentional infliction of emotional distress, Owens alleged he had been "callously ejected from the Escondido agency . . . ."

SHP was insured by West American during the relevant time period under a business owners policy. The coverage clause of the comprehensive business liability part states: "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies." (Italics omitted.) The term "occurrence" is defined as "with respect to personal injury, the commission of an offense, or a series of similar or related offenses . . . ." "Personal injury" is defined as "injury which arises out of one or more of the following offenses committed in the conduct of the named insured's business: [¶] . . .

(c) wrongful entry or eviction, or other invasion of the right of private occupancy . . . ."[2]

H&P was insured by Aetna under its office insurance program. The coverage clause of the personal and advertising injury liability section of its commercial general liability coverage states: "We will pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. . . . [¶] (2) This insurance applies to 'personal injury' only if caused by an offense: . . . [¶] Arising out of the conduct of your business . . . ." The Aetna policy defined "personal injury" as "injury, other than 'bodily injury', arising out of one or more of the following offenses: [¶] (c) Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies . . . ."

General Accident accepted SAI's tender for defense of the Owens complaint. When West American and Aetna declined the tenders from SHP and H&P, General Accident funded the defense for them after receiving an assignment of their rights against their insurers. The action was settled and Owens received $160,000, of which General Accident contributed $25,000. General Accident expended over $118,000 in the defense of all defendants.

General Accident filed its complaint for declaratory relief, seeking a judicial determination of the obligations of West American and Aetna for the defense and indemnification of the defendants in the Owens action. Both West American and Aetna filed motions for summary judgment on the grounds that their respective policies did not provide coverage for the underlying loss and there was no duty to defend. General Accident filed a motion for summary judgment, heard on the same day, seeking an adjudication that each insurer had a duty to defend its insured. The trial court found, as a matter of law, that there was no potential for liability under either policy and granted summary judgment for West American and Aetna. General Accident's motion for summary judgment was denied.

On appeal, General Accident contends the allegations that Owens had been "ousted" and "ejected" from the premises leased to him created the potential for coverage under both policy definitions of personal injury: "wrongful entry or eviction, or other invasion of the right of private occupancy," and "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies . . . ." As discussed below, we conclude this contention is correct.

---

[2]This policy language is identical to that of General Accident's.

### 1. *General Principles Applicable to the Duty to Defend*

■ The Supreme Court has recently reaffirmed the long-standing principles applicable to an insurer's duty to defend. "It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. . . . [T]he duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. . . . [¶] . . . [¶] Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) "The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score. [Citations.]" (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295-296 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose I*).)[3]

■ In *Montrose I*, the Supreme Court reiterated that the insured need only show the bare possibility of coverage to trigger a defense duty. (*Montrose I*, *supra*, 6 Cal.4th at p. 300.) To prevail in an action seeking declaratory relief on the issue of the duty to defend, ". . . the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." (*Ibid.* at p. 300.)

The Supreme Court also discussed the timing and duration of the duty to defend. "The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has been shown that there is *no* potential for coverage . . . . Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf. [Citation.]" (6 Cal.4th at p. 295.) The determination whether the insurer owes a duty to defend rests on the allegations of the complaint and extrinsic facts known to the insurer at the time of tender. (*Id.* at pp. 296-299.) "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a

---

[3]A subsequent case, *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 897 P.2d 1], is known as *Montrose II*.

noncovered claim. [Citations.]" (*Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1081.)

## 2. *General Principles Applicable to Personal Injury Liability Coverage*

■ Unlike liability coverage for property damage or bodily injury, personal injury coverage is not based on an accidental occurrence. Rather, it is triggered by one of the offenses listed in the policy. "In the world of liability insurance, personal injury coverage applies to injury which arises out of the commission of certain enumerated acts or offenses. [Citations.] Coverage thus is triggered by the offense, not the injury or damage which a plaintiff suffers." (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 511 [20 Cal.Rptr.2d 376].) "[T]he term personal [in personal injury] is used in a highly specialized sense. It does not mean physical damage to a person; rather it means injury arising out of one or more specified offenses." (3 Cal. Insurance Law & Practice. (1988 rev.) § 49.403, p. 49-69.)

Personal injury coverage, intended to broaden coverage from the confines of bodily injury or property damage, has been applied to a wide variety of claims. (Pasich, *Advertising Injury and Personal Injury Coverage,* in 2 Ostrager & Newman, 11th Annual Insurance, Excess, and Reinsurance Coverage Disputes (Practicing Law Institute (Jan./Feb. 1994) p. 309).) "To the extent the listed offenses [in the policy] are framed in generic terms, they should be construed broadly to encompass all specific torts which reasonably could fall within the general category." (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co., supra,* 16 Cal.App.4th at p. 515.)

## 3. *West American's Policy*

■ West American's policy language, which is identical to that of General Accident's, provides coverage for injury arising out of "wrongful entry or eviction, or other invasion of the right of private occupancy" committed in the conduct of the insured's business. This phrase, adopted by the insurance industry as part of the standard broad form comprehensive general liability endorsement, has been construed as applying to tort claims arising out of the interference with an interest in real property. (*Fragomeno* v. *Insurance Co. of the West* (1989) 207 Cal.App.3d 822 [255 Cal.Rptr. 111]; *Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 775-776 [215 Cal.Rptr. 416].) These claims have included physical invasions of property, such as trespass and nuisance (see, e.g., *Martin Marietta Corp.* v. *Insurance Co. of North America* (1995) 40 Cal.App.4th 1113 [47 Cal.Rptr.2d 670]; *Hartford Accident and Indemnity* v. *Krekeler* (8th Cir.

1974) 491 F.2d 884) and noninvasive interferences with the use and enjoyment of property (*American States Ins. Co.* v. *Canyon Creek* (N.D.Cal. 1991) 786 F.Supp. 821 [misrepresentation regarding purchasers' rights to ownership of real property underlying mobilehomes]; *Town of Goshen* v. *Grange Mut. Ins. Co.* (1980) 120 N.H. 915 [424 A.2d 822] [wrongful delay by city in subdivision approval]).

Here, Owens alleged his right to possession of the agency premises under the assignment of the lease when he purchased the agency from Glenfed. He alleged the defendants interfered with that right by ousting and ejecting him from the premises. These allegations clearly constitute an invasion of an interest in real property and raise the potential for coverage under West American's policy.

West American points to information discovered through interrogatories and depositions that suggests Glenfed did not assign the lease to Owens. But these facts were discovered well into 1990; West American declined its insured's tender of defense in September 1989. ■ The duty to defend is based on information available at the time of tender and cannot be adjudged on hindsight. (*Montrose I, supra,* 6 Cal.4th at p. 295; *Haskel, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 963, 978 [39 Cal.Rptr.2d 520].) ■ Furthermore, these facts were not conclusive on the question of the status of the lease; they were disputed by Owens, who also subsequently discovered facts supporting his allegations of ouster. "[Once] the claims asserted in the underlying action raise a potential for coverage, the insurers have a duty to provide a defense . . . upon tender of those claims unless and until they produce in court *undisputed* extrinsic evidence which *conclusively* establishes that there is no potential for coverage." (*Haskel, Inc.* v. *Superior Court, supra,* 33 Cal.App.4th at pp. 976-977.)

### 4. *Aetna's Policy*

■ Aetna's policy language provides coverage for personal injury arising out of "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies . . . ." This is a revised version of the language found in West American's policy and was adopted by the insurance industry in the 1986 standard form comprehensive general liability policy; significantly, it omits the phrase " 'other invasion of the right of private occupancy.' " (*Martin Marietta Corp.* v. *Insurance Co. of North America, supra,* 40 Cal.App.4th at p. 1123.)

The omission narrows the definition of this particular offense triggering personal injury coverage to a physical invasion of an interest in real property. "Such language connotes disruptions of the ability of a landowner to

actually occupy his property . . . ." (*Titan Corp.* v. *Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 476 [27 Cal.Rptr.2d 476].) In *American States Ins. Co.* v. *Canyon Creek, supra,* 786 F.Supp. 821, the court refused to find potential coverage under a policy with the same language for a claim of misrepresentation in the sale of manufactured housing. The insured was covered by two policies issued by American States Insurance Company; both had personal injury coverage, but one had language identical to that of West American's and one identical to Aetna's. Although the court found a duty to defend under the first policy, it distinguished the second: "This definition clearly refers to some physical act of eviction or entry upon premises, such as trespassing. Nowhere in the underlying actions do plaintiffs allege any such physical invasion of their property." (*Id.* at p. 829.) The physical invasion need not involve the use or threat of force to dispossess, however. (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co., supra,* 16 Cal.App.4th at pp. 511-512.)

Aetna claims Owens's complaint does not allege a trespass, pointing out that SHP was already on the premises operating the agency when Owens was discharged and that only Owens's employment as manager was terminated. But the complaint alleges that Owens held the lease to the agency in his name and the defendants ousted him and interfered with his right to occupy the premises under the lease. This constitutes a physical invasion of Owens's alleged property right so as to create the potential for coverage and thus the duty to defend.

## 5.  *Disposition*

The summary judgments in favor of West American and Aetna are reversed; summary adjudication for General Accident on the issue of duty to defend is granted. Appellant is entitled to costs of appeal.

Sonenshine, Acting P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied February 27, 1996, and respondents' petition for review by the Supreme Court was denied May 22, 1996.