Filed 5/15/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHELLY ALBERT, | B278295 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC583505) |
| v. | |
| TRUCK INSURANCE EXCHANGE, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Howard L. Halm, Judge. Reversed.

Law Offices of James T. Hudson and James T. Hudson for Plaintiff and Appellant.

Haight Brown & Bonesteel, Victor R. Anderson III, Valerie A. Moore and Vangi M. Johnson for Defendant and Respondent.

_____

# INTRODUCTION

Good fences make good neighbors. Unless they obstruct an easement.

Shelly Albert's neighbor, Henri Baccouche, sued her for "abatement of private nuisance," alleging Albert had erected and refused to remove a fence that partially blocked the only road leading to Baccouche's undeveloped property. Albert tendered Baccouche's complaint to her homeowners and umbrella insurers, but each declined to provide a defense. Albert first sued her homeowners insurer for breach of contract and breach of the implied covenant of good faith and fair dealing, but the trial court and the Court of Appeal in that action determined there was no potential for coverage under the policy.

Albert then sued her umbrella insurer, Truck Insurance Exchange, in this action for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court granted Truck's motion for summary judgment. Albert appeals, arguing the complaint in the underlying action created a potential for coverage under the umbrella policy's "personal injury" coverage for "injury arising out of . . . wrongful entry . . . or invasion of the right of private occupancy."

We agree with cases from California and other jurisdictions that "invasion of the right of private occupancy" is ambiguous and may include non-physical invasions of rights in real property. We disagree with one California case, *Sterling Builders, Inc. v. United Nat. Ins. Co.* (2000) 79 Cal.App.4th 105 (*Sterling Builders*), which relied on part of the Oxford English Dictionary's definition of "invasion" to hold a covered claim must involve "physical occupation of or trespass" on real property.

(*Id*. at p. 108.)  Therefore, because there was a potential for coverage under Albert's umbrella policy, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Policy*

Albert's umbrella policy with Truck provided:  "We will . . . pay damages caused by an occurrence in excess of the retained limit on the insured's behalf."  The policy defined "retained limit" as the greater of "the total limits of liability of any underlying insurance providing coverage for damages as the result of an occurrence" or $1,000.  The policy further provided: "If underlying insurance does not cover damages covered by this policy, we will pay damages which exceed [$250]."  Because Albert's homeowners policy did not include coverage for personal injury, the umbrella policy's personal injury provision provided coverage for damages from personal injury that exceeded $250.[1]

---

[1]    "'Primary insurance provides coverage immediately upon the occurrence of a loss or an event giving rise to liability, while excess insurance provides coverage only upon the exhaustion of specified primary insurance.  [Citation.]  Insurance policies sometimes include both excess and umbrella insurance.  Umbrella insurance provides coverage for claims that are not covered by the underlying primary insurance.  [Citation.]  An umbrella insurer "drops down" to provide primary coverage in those circumstances.  [Citations.]  Thus, a policy that provides both excess and umbrella insurance provides both excess and primary coverage.'"  (*Federal Ins. Co. v. Steadfast Ins. Co.* (2012) 209 Cal.App.4th 668, 680.)  Albert's Truck policy provided both umbrella and excess coverage.  But because Albert's homeowners

3

In addition to providing indemnification for damages, Truck agreed to "defend any insured for any claim or suit that is covered by this insurance but not covered by other insurance."

The policy's definition of "Damages" included "the total of damages that the insured must pay . . . because of . . . personal injury . . . caused by an occurrence covered by this policy."[2] "[W]ith regard to personal injury," "occurrence" was defined as "offenses committed during the policy period, even if the resulting injury takes place after the policy expires." Finally, the policy's definition of personal injury included "injury arising out of . . . wrongful eviction, wrongful entry, or invasion of the right of private occupancy."

B.    *The Underlying Action*

Baccouche filed his complaint in the underlying action during the umbrella policy period. Baccouche alleged that a 400-foot long, 26-foot wide private road provided the only access to his property from any public road. The private road straddled the property line separating two of Baccouche's neighbors, so that each neighbor owned half (i.e., 13 feet) of the road from the center of the road. Albert owned one half of the road and the other neighbor (who is not a party to this action) owned the other half. Baccouche alleged that he had an easement over the road, giving him access to his property, but that Albert erected and refused to

---

policy did not provide personal injury coverage, Truck's umbrella coverage is at issue in this action.

[2]    The policy excluded coverage for "damages . . . [e]ither expected or intended from the standpoint of an insured." Truck does not argue this (or any other) exclusion applies.

4

remove a fence that obstructed the easement and precluded Baccouche from using the half of the road on Albert's property.

Specifically, Baccouche alleged Albert "erected a permanent chain-link fence on certain portions of her property that were subject to a reciprocal easement as a private roadway for ingress and egress," which "constitutes a nuisance within the meaning of Civil Code Section 3479 in that it . . . interfere[s] with the comfortable enjoyment by plaintiff of his property, including access thereto." Instead of using a 26-foot wide road, Baccouche could only access his property using a 13-foot wide road. He sought damages including the "diminishment in value" of his property. Albert points to these allegations as the basis for potential coverage under the personal injury provision of the umbrella policy, and hence the duty to defend.[3]

C.    *The Tenders*

Albert tendered Baccouche's complaint to Mid-Century Insurance Company, which issued her homeowners policy, and to Truck. Mid-Century denied the claim, stating it did not owe

---

[3]    Baccouche also alleged Albert engaged in other wrongful conduct occurring before the Truck umbrella policy took effect, including trespassing onto Baccouche's property and pruning his mature olive trees, leaving them in a "pitiable state." Albert does not argue these other allegations created a potential for coverage under the policy. (See *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 288 ["[i]n a 'mixed' action, where some claims are potentially covered while others are not, 'the insurer has a duty to defend as to the claims that are at least potentially covered'"].)

5

Albert a "defense or indemnity obligation" under the homeowners policy.

Three years later, Albert re-tendered the complaint to Truck.[4] Counsel for Truck responded by denying Truck had a duty to defend or indemnify Albert under the umbrella policy. Counsel for Truck wrote there was "no potentiality that [Baccouche's] claims can be brought within the insurance coverage provided by" the umbrella policy because, according to Truck, "all of the claims of Mr. Baccouche occurred prior to the first effective date of the" policy. Counsel for Truck discussed the allegations in Baccouche's complaint that, prior to the effective date of the umbrella policy, Albert had damaged Baccouche's trees and trespassed on his property. Counsel for Truck did not mention Baccouche's allegation that, during the policy period, Albert impeded his access to his property by maintaining the fence on the easement.

Counsel for Albert responded to Truck's denial letter and pointed out that Baccouche's complaint alleged Albert "had erected and continued to maintain a chain-link fence on property subject to a reciprocal easement," which "constituted a nuisance," and that Baccouche sought damages "for the diminished value of his real property and emotional distress." Counsel for Truck responded by "disagree[ing] with [the] assertion" that "the erection of the fence and the maintenance of the fence on the easement was a 'wrongful eviction, wrongful entry or invasion of the right of private occupancy.'" Counsel for Truck stated that

---

[4]     At that point, Albert had appealed adverse judgments in the underlying action and her insurance coverage action against Mid-Century.

6

"Ms. Albert could not be said to have 'wrongfully entered' the easement since the easement was on her own property" and that "Mr. Baccouche could not be said to have made a claim for 'invasion of the right to private occupancy' with respect to the easement since he never had a right to 'private occupancy' of the easement."

### D. *Albert's Complaint Against Truck*

Albert sued Truck for breach of contract and breach of the implied covenant of good faith and fair dealing on the theory Truck had a duty to defend and indemnify her under the umbrella policy's personal injury coverage. Albert alleged Truck's duties to defend and indemnify arose from Baccouche's allegations that Albert "erected and maintained a permanent chain-link fence on real property subject to a reciprocal easement, thereby interfering with Baccouche's right of full use of said easement for ingress and egress to his real property; that said interference with the reciprocal easement constituted a nuisance; and that as a result Baccouche was entitled to an injunction and damages for diminishment in value of his real property and emotional distress." Albert alleged "Truck . . . breached [its] contract of insurance by failing and refusing to defend and indemnify [Albert] in connection with [the] Baccouche action" and "Truck . . . breached its duties of good faith and fair dealing [by] fail[ing] to pay contract benefits to [Albert] at the time when [Truck] knew, or should have known, that [Albert was] entitled to defense and indemnity under the terms of [its] insurance policy."

7

E.   *Truck's Motion for Summary Judgment and Albert's Motion for Summary Adjudication*

Truck moved for summary judgment, arguing "[t]he claims for erection and maintenance of a fence on Mr. Baccouche's easement do not constitute a 'wrongful entry, wrongful eviction or invasion of the right of private occupancy' under the 'personal injury' coverage of the Truck personal umbrella policy as a matter of law." Albert moved for summary adjudication on whether Truck owed Albert a duty to defend. In her opposition to Truck's motion for summary judgment and her motion for summary adjudication, Albert argued Baccouche's complaint alleged wrongful entry because "Baccouche alleged he had a property right (reciprocal easement) which was physically invaded by Albert's placement of the fence. In other words, Baccouche claimed that Albert's ownership of the property gave her no right to impede his use of the easement; if so, it would be a 'wrongful entry.'" Albert also argued Baccouche's complaint alleged an "invasion of right of private occupancy" because "an easement creates a 'right to enter and use land in another's possession' and to that extent grants a limited right to occupy the land. Albert's fence allegedly interfered with that right, and hence was an 'invasion of the right of private occupancy.'"

The trial court ruled there was no potential coverage for wrongful entry onto the easement because, "if the interest in real property is nothing more than a limited privilege to use land belonging to another, then interference with said interest cannot constitute 'unauthorized entry onto the land of another.'" The court also ruled that maintaining the fence could not be an "invasion of the right of private occupancy" because Baccouche

8

did not control the easement and "[o]ccupancy means having possession, which in turn, requires having control."

The trial court granted Truck's motion for summary judgment and denied Albert's cross-motion for summary adjudication. Albert timely appealed from the judgment.

## DISCUSSION

Albert states her appeal "is based solely on a claim that there was a duty to defend [her] in the underlying Baccouche Complaint for Abatement of Private Nuisance, and that her claim was only under the 'personal injury' coverage, not under the 'bodily injury' or 'property damage' coverages in the Truck policy." Albert argues Truck had a duty to defend under the personal injury coverage for "invasion of the right of private occupancy" because Albert's "alleged interference with the roadway easement . . . interfered with Baccouche's use and enjoyment of his adjoining property. To the extent that a 'possessory interest' in the land is required, Baccouche certainly had a possessory interest in his adjoining land." Albert asserts "Baccouche clearly had a right to occupy his own property, which right was interfered with by Albert's fence over the roadway easement."[5]

---

[5] Although Albert did not make this precise argument in the trial court, we can consider it. (See *DD Hair Lounge, LLC v. State Farm General Ins. Co.* (2018) 20 Cal.App.5th 1238, 1243 ["we may exercise our discretion to address purely legal questions based on an undisputed factual record"]; *C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1492 ["[o]n appeal, a party may raise a new issue of law based on undisputed facts

9

Truck does not respond to Albert's argument there was a potential for coverage under the personal injury provision of the policy because Albert allegedly interfered with Baccouche's right of private occupancy of his property, even though this is Albert's main argument on appeal.  Instead, Truck relies on the trial court's ruling that "Mr. Baccouche had no 'right of private occupancy' in or to the reciprocal easement on Ms. Albert's property."  We agree with Albert, however, that this is not the issue.[6]

---

[citation] and may even 'change the legal theory he relied upon at trial, so long as the new theory presents a question of law to be applied to undisputed facts in the record'"].)  Truck does not argue Albert forfeited this argument.

[6]     Truck's brief includes other arguments that are, to put it mildly, not relevant to this appeal.  Truck's first argument, in a section titled "No Property Damage," is that "there is no coverage for 'property damage' under the Policy" because "the claims for interference with the easement in the Baccouche Action do not constitute 'property damage' as a matter of law."  As noted, Albert does not argue there was a potential for coverage under the property damage provision of the policy.  Truck also argues, in a section titled "No Accident – Undisputed Willful Acts," that, "[u]ntil the insured makes out a prima facie showing of an 'accident,' the insurer has no burden whatsoever," and that Albert is collaterally estopped from arguing that cutting down olive trees is an accident.  The occurrence required for personal injury coverage, however, is one of the offenses listed in the policy, not an accident, and, in any event, Albert does not argue cutting down the trees was an accident.

10

A.    *Applicable Law and Standard of Review*

1.    *Interpreting an Insurance Contract*

"Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 501; accord, *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 (*Bank of the West*); see *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822 ["[u]nder statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation"]; *Jon Davler, Inc. v. Arch Ins. Co.* (2014) 229 Cal.App.4th 1025, 1033 [same].) The parties' mutual intention "'is to be inferred, if possible, solely from the written provisions of the contract. If the language of the insurance contract is clear and explicit, it governs.'" (*Pulte Home Corp. v. American Safety Indemnity Co.* (2017) 14 Cal.App.5th 1086, 1105 (*Pulte Home Corp.*); see *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 840 ["[i]f the meaning a layperson would ascribe to insurance contract language is not ambiguous, courts will apply that meaning"]; *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, 195 [same].)

If the language of an insurance contract is ambiguous, however, "'in order to protect the objectively reasonable expectations of the insured, the courts endeavor to interpret the ambiguous language in the sense in which the insurer believed, at the time of making it, the insured understood it. Only if this approach does not resolve the ambiguity, do the courts then resolve it against the insurer.'" (*Pulte Home Corp.*, *supra,*

11

14 Cal.App.5th at p. 1105; see *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 311 ["[i]nsurance policies are read in light of the parties' reasonable expectations and, when ambiguous, are interpreted to protect the reasonable expectations of the insured"]; *Bank of the West, supra,* 2 Cal.4th at p. 1265 ["a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations," and "[i]n so doing, the court must interpret the language in context, with regard to its intended function in the policy"].) "Where . . . the insurer has drafted the policy language, it is usually held responsible for ambiguous policy language, through the rule of construction in favor of the insured's reasonable expectations." (*Pulte Home Corp.,* at p. 1106.)

Finally, "'the term personal [in personal injury] is used in a highly specialized sense. It does not mean physical damage to a person; rather it means injury arising out of one or more specified offenses.'" (*General Accident Ins. Co. v. West American Ins. Co.* (1996) 42 Cal.App.4th 95, 103 (*General Accident*); see *Stonelight Tile, Inc. v. California Ins. Guarantee Assn.* (2007) 150 Cal.App.4th 19, 38 (*Stonelight Tile*) ["'"[p]ersonal injury liability" is a term of art that covers certain enumerated offenses'"].) Thus, "personal injury coverage 'is triggered by one of the offenses listed in the policy,' not the injury or damages that a plaintiff suffers." (*Stonelight Tile,* at p. 38.)

12

## 2. *The Duty To Defend*

"'[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.'" (*Riddell, Inc. v. Superior Court* (2017) 14 Cal.App.5th 755, 764.) The duty "'is broader than the duty to indemnify.'" (*Id.* at p. 765) It "arises even if the evidence suggests, without conclusively establishing, that the loss is not covered." (*The Traveler's Property Casualty Co. of America v. Actavis, Inc.* (2017) 16 Cal.App.5th 1026, 1036-1037, review granted Feb. 21, 2018, S245867.) Thus, "'[a]n insurer may have a duty to defend even when it ultimately has no obligation to indemnify, either because no damages are awarded in the underlying action against the insured, or because the actual judgment is for damages not covered under the policy.'" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287.)

"Whether an insurer owes an insured a duty to defend a third party's lawsuit depends, in the first instance, on a comparison of the allegations of the third party's complaint and the terms of the insured's policy. [Citation.] If any facts stated in or fairly inferable from the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises."[7] (*McMillin Management Services, L.P. v. Financial Pacific Ins. Co.* (2017) 17 Cal.App.5th 187, 191; see *Jon Davler, Inc. v. Arch Ins. Co.*, *supra*, 229 Cal.App.4th at p. 1032 ["'[a]n insurer must defend its insured against claims that create a *potential* for indemnity

---

[7] Albert does not argue that any facts other than those alleged in Baccouche's complaint give rise to Truck's duty to defend.

under the policy'"].)  "In general, doubt as to whether an insurer owes a duty to defend 'must be resolved in favor of the insured.'" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, *supra*, 59 Cal.4th at p. 287.)

"The duty to defend, though broad, is measured by the nature and kinds of risk insured by the policy."  (*The Traveler's Property Casualty Co. of America v. Actavis, Inc.*, *supra*, 16 Cal.App.5th at p. 1037.)  "The proper focus is on the facts alleged in the complaint, rather than the alleged theories for recovery. . . .  'The ultimate question is whether the facts alleged "fairly apprise" the insurer that the suit is upon a covered claim.'" (*Albert v. Mid-Century Ins. Co.* (2015) 236 Cal.App.4th 1281, 1289-1290; see *Gonzalez v. Fire Ins. Exchange* (2015) 234 Cal.App.4th 1220, 1230 ['"[s]ince pleadings are easily amended, the proper focus is on the facts alleged, rather than the theories for recovery'"].)

### 3. *Summary Judgment Standard and Standard of Review*

The legal framework governing the duty to defend "shapes a party's burden when seeking summary judgment."  (*Gonzalez v. Fire Ins. Exchange*, *supra*, 234 Cal.App.4th at p. 1229.)  "On summary judgment, '[t]o prevail [on the duty to defend issue], the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*.  In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.  Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the

14

action) will fall within the scope of coverage, therefore add no weight to the scales.' [Citation.] '[W]hen an insurer seeks summary judgment on the ground the claim is excluded, the burden is on the insurer to prove that the claim falls within an exclusion.' [Citation.] In contrast, an insured must prove its claim falls within the policy's coverage, even when the insurer has moved for summary judgment." (*Albert v. Mid-Century Ins. Co.*, *supra*, 236 Cal.App.4th at p. 1290; see *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, *supra*, 59 Cal.4th at p. 288 ["an insurer may be excused from a duty to defend only when "'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage'"""].)

"'Where summary judgment has been granted, we review the trial court's ruling de novo. [Citation.] We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. [Citation.] We affirm summary judgment where the moving party demonstrates that no triable issue of material fact exists and that it is entitled to judgment as a matter of law. [Citation.] Our review of the interpretation of an insurance contract on undisputed facts is also de novo." (*Albert v. Mid-Century Ins. Co.*, *supra*, 236 Cal.App.4th at p. 1289.)

> B. *There Was No Potential for Coverage Based on Wrongful Entry*

Albert argues Baccouche's allegation she erected and maintained a fence on her property, which Baccouche claimed constituted a nuisance, was an allegation of "wrongful entry" because wrongful entry includes nuisance claims. The court in

15

*Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113 (*Martin Marietta*) did state that "trespass and nuisance claims may include wrongful entry or invasion by pollutants" and that personal injury coverage for wrongful entry may apply to claims alleging nuisance. (*Id.* at p. 1132.) But not because they are nuisance claims. Rather, the court in *Martin Marietta* stated personal injury coverage may apply to nuisance claims because nuisance claims may allege wrongful entry or other physical invasion. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2017) ¶ 7:1075.2, p.7C-45 [citing *Martin Marietta* for the proposition that "[n]uisance claims involving *physical entry* onto another's land constitute a 'wrongful entry' for purpose of 'personal injury liability' coverage"].)

"'Wrongful entry' is a term not altogether foreign to the law. Our Supreme Court long ago said, 'It is elementary law, that every wrongful entry upon lands in the occupation or possession of the owner constitutes a trespass'" (*Martin Marietta, supra*, 40 Cal.App.4th at p. 1132), and trespass requires a "direct or indirect entry or intrusion . . . upon the plaintiffs' lands." (*Fibreboard Corp. v. Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 512 (*Fibreboard*).) "'The essence of the cause of action for trespass is an "unauthorized entry" onto the land of another.'" (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1042.)

Thus, wrongful entry requires entry. Although Albert's actions (erecting and maintaining a fence that interfered with her neighbor's easement) may have been wrongful, her entry onto her own property was not. Baccouche's nuisance allegations did not allege wrongful entry or physical invasion by pollutants or

16

anything else. Therefore, there was no potential for coverage under the umbrella policy's personal injury coverage for wrongful entry.

C. *There Was a Potential for Coverage Based on Invasion of the Right of Private Occupancy*

1. *An Invasion of the Right of Private Occupancy Does Not Have To Be Physical*

"Occupancy goes to the holding, possessing or residing in or on something." (*Fibreboard, supra*, 16 Cal.App.4th at p. 515.) "The rights which attend occupancy may be, arguably, many." (*Martin Marietta, supra*, 40 Cal.App.4th at p. 1134.) "'Invasion of the right of private occupancy' resembles the definition of nuisance, an "'interference with the interest in the private use and enjoyment of the land.'" [Citation.] 'The typical and familiar nuisance claim involves an activity or condition which causes damage or other interference with the enjoyment of adjoining or neighboring land.'" (*Ibid.*)

"'[A]ctual physical interference with land use constitutes the most obvious and common type of nuisance.'" (*Rancho Viejo v. Tres Amigos Viejos* (2002) 100 Cal.App.4th 550, 561.) But it is not the only type. An invasion of the right of private occupancy does not have to be a physical invasion of the land; a non-physical invasion of real property rights can interfere with the use and enjoyment of real property. In *General Accident, supra*, 42 Cal.App.4th 95 the court (before the same court disagreed with itself in *Sterling Builders*) stated that invasion of the right of private occupancy includes "noninvasive interferences with the use and enjoyment of property." (*General Accident,*

17

at p. 104; cf. *Stonelight Tile, supra,* 150 Cal.App.4th at p. 39 ["California courts have construed 'wrongful entry or eviction' as applying to tort claims arising out of the interference with an interest in real property, such as trespass, nuisance, and noninvasive interferences with the use and enjoyment of property"].)  Federal courts applying California law have reached similar conclusions.  (See, e.g., *Sell v. Nationwide Mut. Ins. Co.* (9th Cir. 2012) 492 Fed.Appx. 740, 743 [invasion of the right of private occupancy may include "'suits by neighboring landowners for nuisance and trespass claims'"]; *Hirschberg v. Lumbermens Mut. Cas.* (N.D.Cal. 1992) 798 F.Supp. 600, 604-605 ["commentators have recognized that in the context of personal injury coverage of general comprehensive liability policies, the 'invasion of the right of private occupancy' affords coverage 'for interference with possession and enjoyment by means such as . . . obstruction of access, . . .  actionable on a variety of theories such as . . .  nuisance'"].)

Baccouche alleged Albert blocked half of the only road providing access to his undeveloped property, which "interfere[d] with [his] comfortable enjoyment . . . of his property, including access thereto."  Such alleged conduct invaded Baccouche's right of private occupancy by interfering with his right to use and enjoy

his property, or at least Albert reasonably believed it did.[8] Truck does not suggest why (or even that) it believed, at the time it issued Albert her policy, Albert understood that allegations by a neighbor relating to damages caused by a fence she might erect and maintain on or around her property would not be covered under the policy. (See *Pulte Home Corp.*, *supra*, 14 Cal.App.5th at p. 1105; see also *Kitsap County v. Allstate Ins. Co.* (1998) 136 Wash.2d 567, 590 ["the plain, ordinary, and popular meaning that an average purchaser of insurance would ascribe to the phrase 'other invasion of the right of private occupancy' would include a trespass on or against a person's right to use premises or land that are secluded from the intrusion of others"].)

"[I]nvasion of the right of private occupancy," a phrase "insurance companies have consistently refused to define," has "generated literally hundreds of lawsuits, with widely varying results." (*New Castle County, DE v. National Union Fire Ins. Co. of Pittsburgh, PA* (3d Cir. 2001) 243 F.3d 744, 756 (*New Castle County*).) Many courts have held that an invasion of the right of private occupancy encompasses interference with land use, including two of the leading and most frequently cited cases on

---

[8] Truck does not argue a 13-foot-wide access road would be sufficient for the full use and enjoyment of Baccouche's property. In any event, Albert is entitled to all reasonable inferences from the allegations in Baccouche's complaint. (See *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, *supra*, 59 Cal.4th at p. 298.) It is "fairly inferable" (*McMillin Management Services, L.P. v. Financial Pacific Ins. Co.*, *supra*, 17 Cal.App.5th at p. 191), and the trial court ultimately found, that a 13-foot-wide road was not sufficient access for construction equipment and other vehicles necessary for Baccouche to develop his property.

19

this issue, *Town of Goshen v. Grange Mut. Ins. Co.* (1980) 120 N.H. 915 (*Town of Goshen*) and *New Castle County*, *supra*, 243 F.3d 744. In *Town of Goshen* the New Hampshire Supreme Court rejected the argument "that an appreciable and tangible interference with the physical property itself is necessary to constitute an 'invasion of the right of private occupancy.'" (*Town of Goshen*, at p. 917.) The allegations in the underlying complaint in *Town of Goshen* included "that the [town's] planning board created economic hardships that destroy the viability of the complainant's project [to develop his land], deprived him of his ability to ever recover the money, time and other resources invested in the development of his property, thus causing him substantial damage, and denied plaintiff's right to the free enjoyment of his property without due process of law." (*Id.* at pp. 917-918.)

In *New Castle County*, *supra*, 243 F.3d 744 the court, nine years before Truck issued its umbrella policy to Albert, asked why, after 20 years of legal decisions finding the term ambiguous, insurance companies continued to use, but not define, "invasion of the right of private occupancy." (*Id.* at p. 755.) The court stated: "A simple definition of the phrase, indicating, for example, that it refers only to offenses requiring a physical invasion . . . would be dispositive." (*Id.* at p. 756.) The court held that personal injury coverage for invasion of the right of private occupancy could apply to allegations challenging a political subdivision's zoning and permitting decisions. (*Ibid.*) Numerous courts have agreed with *Town of Goshen* and *New Castle County* that allegations of non-physical interference with the use and

20

enjoyment of property may fall under personal injury coverage for invasion of the right of private occupancy, including allegations in actions based on zoning decisions,[9] discrimination claims,[10] pollution,[11] and landlord-tenant disputes.[12]

[9] See, e.g., *Town of Stoddard v. Northern Sec. Ins. Co., Inc.* (D.N.H. 1989) 718 F.Supp. 1062, 1064 [allegations the town's "actions in enacting the zoning amendment deprived [the underlying plaintiff] of its intended use of the property"].)

[10] See, e.g., *Lime Tree Village Community Club Assn., Inc. v. State Farm General Ins. Co.* (11th Cir. 1993) 980 F.2d 1402, 1407 [discriminatory amendments to CC&Rs had "'the effect of imposing an unreasonable restraint on trade'"]; *City of Glendale v. National Union Fire Ins. Co. of Pittsburgh, PA* (D. Ariz., Mar. 29, 2013, No. CV-12-380-PHX-BSB) 2013 WL 1296418, at pp. 1, 12, 19 [allegations the city discriminated against a lessee of hangars at a municipal airport because the city intended "'to make the land lease unprofitable and uneconomical'" in order to "'take over the land and its improvements'"]; *Pellegrino Food Products Co., Inc. v. American Automobile Ins. Co.* (W.D. Pa. 2008) 655 F.Supp.2d 569, 578-579 [allegations of discriminatory zoning and property sales]; *Ranger Ins. Co. v. Bal Harbour Club, Inc.* (Fla. Dist. Ct. App. 1985) 509 So.2d 940, 941-942 [claim that requiring purchasers of property to be members of a club that discriminated against Jews "was a sham to exclude Jews from the use and occupancy of the property"].

[11] See, e.g., *Titan Holdings Syndicate, Inc. v. City of Keene, N.H.* (1st Cir. 1990) 898 F.2d 265, 273 [allegations that "sewage treatment plant's noxious odors, noise and light" interfered with the underlying plaintiffs' "'quiet enjoyment of the homestead and have substantially deprived [them] of the use of the homestead'"]; *Kitsap County v. Allstate Ins. Co.*, *supra*, 136 Wash.2d

Baccouche's allegations are similar to those in *Town of Goshen* and *New Castle County*. Baccouche alleged Albert interfered with his right "to the free enjoyment of his property" (*Town of Goshen, supra,* 120 N.H. at p. 918), and it is a reasonable inference from Baccouche's allegations that Albert's conduct in obstructing the easement limited his ability to develop his land. Like a municipality whose zoning ordinance affects a property owner's ability to develop his or her property, a polluter whose odor or noise restricts an owner's use and enjoyment of his or her property, and other insureds who engage in conduct that invade the right of private occupancy by interfering with a neighbor's property rights, Albert engaged in conduct that Baccouche alleged invaded his right of private occupancy of his property by interfering with his ability to access, use, develop, and enjoy it. The personal injury provision of Albert's umbrella policy potentially covered Baccouche's allegations, and Truck

---

at pp. 571-572, 592 [claims that contaminants, foul odors, and hazardous waste interfered with the use and enjoyment of nearby property].

[12]    See, e.g., *Nautilus Ins. Co. v. BSA Ltd. Partnership* (D. Md. 2009) 602 F.Supp.2d 641, 654 [allegations that "a financial harm" "interfer[ed] with the tenants' right to remain on their property"]; *Winters v. Transamerica Ins. Co.* (10th Cir. Sept. 9, 1999, No. 98-2000) 1999 WL 699835, at p. 3 [allegations a landlord "harassed, coerced, intimidated and threatened the tenants, causing them emotional distress"]; *Beltway Management Co. v. Lexington-Landmark Ins. Co.* (D.D.C. 1990) 746 F.Supp. 1145, 1156 [breach of the implied warranty of habitability].

breached its duty to defend by not providing Albert with a defense in the underlying action.

2.      *The Cases Truck Cites (or Should Have Cited) Are Distinguishable*

Truck relies on *Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871 (*Kazi*) and *Evergrow Industrial Co., Inc. v. Travelers Ins. Co.* (9th Cir. 2002) 37 Fed.Appx. 300 (*Evergrow*). Neither case is helpful.  *Kazi* involved insurance coverage for property damage, not personal injury.  The Supreme Court held the insurers in that case did not have a duty to defend under the property damage provisions of the insurance policies because interference with an easement is not damage to tangible property.  (*Kazi*, at p. 887.)  The Supreme Court did not address whether an insurer breached its duty to defend based on personal injury coverage.  (*Id.* at pp. 876, 879, fn. 1.)

In *Evergrow*, *supra*, 37 Fed.Appx. 300 the Ninth Circuit cited *Kazi* and rejected an argument that interference with an easement could trigger coverage for "'invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord or lessor.'" (*Evergrow,* at p. 301.)  Although the court's brief, unpublished opinion in *Evergrow* does not disclose the facts of the case (see *ibid.* ["[b]ecause the parties are familiar with the factual and procedural history of this case, we will not recount it here"]), it appears the plaintiff in the underlying action in *Evergrow* alleged the insured interfered with the underlying plaintiff's right to use an easement, not the underlying plaintiff's right to use land it owned.  (See *ibid.* ["[t]he claim [was] that Evergrow interfered with [the underlying plaintiff's] easement"].)  This is the

23

argument Albert does *not* make in this appeal; Albert argues Baccouche alleged her fence interfered with Baccouche's use and enjoyment of his property, not with Baccouche's use and enjoyment of the easement. The court in *Evergrow* held the insurer did not have a duty to defend because, "[u]nder California law, the clause 'invasion of the right of private occupancy' requires interference with an enforceable possessory interest in real property and not just an interference with the use or enjoyment of real property," and "'an easement is a *nonpossessory* interest in the land of another . . . .'" (*Id.* at pp. 301-302.) Baccouche may not have had an enforceable possessory interest in the easement, but he did have one in his property, and he alleged Albert interfered with it.

The strongest support for Truck's position is *Sterling Builders*, *supra*, 79 Cal.App.4th 105, which Truck for some reason expressly disavows and asserts has "nothing to do with the issue before this court."[13] In *Sterling Builders*, the same court that four years earlier had decided *General Accident*, *supra*, 42 Cal.App.4th 95 held that "claims that do not involve the physical occupation of or trespass upon real property are not within the meaning of the phrase ['wrongful entry or eviction or other invasion of the right of private occupancy'], even though the claim may entail interference with rights relating to such property." (*Sterling Builders*, at p. 108.) The *Sterling Builders*

[13] In a section of its brief titled "Misapplication of *Sterling Builders*," Truck states that Albert "asserts that there is a case directly on point, which will resolve the issue before this Court - *Sterling Builders*," but Truck argues that Albert "is mistaken." Indeed, Truck does not even argue an invasion of the right of private occupancy must be a physical invasion.

24

court said its previous statement in *General Accident*, "that a 'noninvasive interference with the use and enjoyment of property' may constitute an 'other invasion' under such an insuring clause," was "erroneous." (*Sterling Builders*, at p. 107.)

We think the *General Accident*/*Sterling Builders* court was right the first time. The court's analysis in *Sterling Builders* relied on the Oxford English Dictionary's definition of "invasion," which the court stated must be physical: "'Invasion' denotes an incursion, not a misrepresentation." (*Sterling Builders*, *supra*, 79 Cal.App.4th at p. 112.) The Oxford English Dictionary, however, also provides examples of non-physical invasions including "invasion [of] civil liberties" and "invasions of the constitution." (8 Oxford English Dict. (2d ed. 1989) p. 37.) As do other dictionaries. (See, e.g., Merriam-Webster Unabridged (2018 online) [including as its third definition of invasion "encroachment, intrusion; specifically: an encroachment upon a right protected by law affording grounds for an action for damages or some other remedy"]; Webster's 3d New Internat. Dict. (1993) p. 1188 [same]; Webster's New Twentieth Century Dict. (1983) p. 965 [including as its second definition of invasion "an attack on the rights of another; infringement or violation"].) Indeed, courts relying on other dictionaries have applied "invasion of the right of private occupancy" to non-physical invasions. (See, e.g., *City of Glendale v. National Union Fire Ins. Co. of Pittsburgh, PA*, *supra*, 2013 WL 1296418 at p. 6 ["[t]he [Merriam-Webster dictionary] definition of invade also includes terms that do not appear to require a physical intrusion, including 'to encroach upon,' [']infringe,' or 'affect injuriously'"]; *Kitsap County v. Allstate Ins. Co.*, *supra*, 136 Wash.2d at p. 590 ["an 'invasion' is defined [by Webster's New World Dictionary,

25

Webster's Deluxe Unabridged Dictionary, and American Heritage Dictionary] as an 'act of . . . encroachment or trespassing,'" which, in the context of invasion of the right of private occupancy, would include a "trespass on or against a person's right"].)

Moreover, the cases the court in *Sterling Builders* cited do not support its conclusion. According to *Sterling Builders*, "In *Fibreboard*[, *supra*, 16 Cal.App.4th at p.] 512, the court stated the 'other invasion' language implicates a 'trespass paradigm.'" (*Sterling Builders, supra,* 79 Cal.App.4th at p. 109.) This statement mischaracterizes *Fibreboard.* The personal injury coverage in *Fibreboard* was significantly different from Truck's coverage. The policy in *Fibreboard* provided coverage for "'wrongful entry or eviction or other invasion of an individual's *right of privacy.*'" (*Fibreboard*, at p. 511, emphasis added.) The court in *Fibreboard* did not analyze the "other invasion" language because the insured did not argue the asbestos products at issue in *Fibreboard* could have invaded the right of privacy. The "trespass paradigm" in *Fibreboard* referred to coverage for "wrongful entry," not "invasion of the right of private occupancy," and, as noted, we agree with the *Fibreboard* court's analysis on that point.

In *Tinseltown Video, Inc. v. Transportation Ins. Co.* (1998) 61 Cal.App.4th 184 (*Tinseltown Video*) the court held "a partner's interest in partnership property of whatever character (realty or personalty) is an interest in personalty for all purposes." (*Id.* at p. 187.) There was no potential for personal injury coverage because the plaintiffs in the underlying action in *Tinseltown Video* "had no . . . real property interest in their own names, but merely held a statutory right to equal possession of two . . . stores incident to their personalty interest in the

partnership which owned the stores." (*Id.* at p. 201.) The limited holding that a partner does not occupy space owned (and occupied) by a partnership in which he or she is a partner does not support the court's analysis or conclusion in *Sterling Builders.*

In *Wilmington Liquid Bulk Terminals, Inc. v. Somerset Marine Inc.* (1997) 53 Cal.App.4th 186 (*Wilmington Liquid*), disapproved on another ground in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13, the insured agreed to "obtain all permits for and construct a dock suitable for use by [the plaintiff in the underlying action] for loading and unloading of cement products." (*Wilmington Liquid*, at p. 190.) The court held there was no potential for personal injury coverage because there was no allegation the plaintiff in the underlying action had ever occupied any property, and thus there could be no alleged violation of the right of private occupancy. (See *id.* at pp. 195-196 ["[n]owhere did [the underlying plaintiff] allege in its very detailed complaints that there was an interference with the use of real property which it had ever occupied or possessed"].)

Finally, the court in *Stein-Brief Group, Inc. v. Home Indemnity Co.* (1998) 65 Cal.App.4th 364 (*Stein-Brief*) relied on the distinction between contract claims and tort claims to hold there was no potential coverage for the insured's contract claims. (See *id.* at p. 372 ["like bodily injury and property damage coverage, personal injury coverage is limited to tort damages"].) The Supreme Court rejected that distinction the following year. (See *Vandenberg v. Superior Court, supra*, 21 Cal.4th at p. 839 ["we reject the ex contractu/ex delicto distinction"].) Thus, *Stein-Brief* does not "show[ ] . . . there must be an occupation of the real property, as distinct from a mere affecting of a right related to

27

real property, before an invasion takes place." (*Sterling Builders, supra,* 79 Cal.App.4th at p. 109.)

## DISPOSITION

The judgment is reversed.  The trial court's order granting Truck's motion for summary judgment is vacated, and the trial court is directed to enter a new order denying the motion.  The trial court's order denying Albert's motion for summary adjudication is vacated, and the trial court is directed to enter a new order granting the motion.  Albert is to recover her costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.                           ZELON, J.